Michael Cianci
#005538
Law Offices
333 N. Wilmot Rd.
Suite 340
Tucson, AZ. 85711
480-205-6210
Mcianci100@outlook.com
Attorney, Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Cianci, an individual<br><br>Plaintiff,<br><br>v.<br><br>Department of Health and Human Services, a federal agency, Robert Kennedy, Jr., as Secretary, Department of Health and Human Services, McArthur Allen, as an individual and in his official capacity, and John and Jane Does, I-VI, individuals and in their official capacity,<br><br>Defendants. | No.<br><br>**COMMPLAINT**<br><br>**(Privacy Act, ADEA,<br>*Bivens* Civil Rights, False<br>Claims Act Retaliation,<br>OWBPA)** |

Comes now Plaintiff, who upon information and belief, files his Complaint against

the Department of Health and Human Services (HHS), a federal agency (Privacy Act

claim), against Secretary Robert Kennedy, Jr., HHS, in his official capacity (ADEA

claim), and against defendant McArthur Allen, in his official and individual capacity, and

against Jane and John Does, I-VI, in their official and individual capacity each. Plaintiff

incorporates by reference the component agency's published enacting organizational

structure attached as Exhibit 1, and alleges as follows:

## BACKGROUND AND GENERAL ALLEGATIONS

1.      This case involves acts of employment age discrimination, and retaliation, and retaliation under the False Claims Act, committed by defendants Allen and Does against Plaintiff, and post-employment discriminatory retaliatory acts perpetrated by defendants against Plaintiff which are characterized by defendants' fraudulent concealment and deceptive acts, due process constitutional law violations, and post-employment threats and harassment. It also includes Plaintiff's claims under the Privacy Act to correct and amend employment-related records and for damages for the agency's willful and deliberate failure to accurately maintain those records. Claims for retaliation under the False Claims Act also relate to Allen's retaliatory acts of placing Plaintiff under investigation and upon investigative leave, to prevent Plaintiff from requesting an outside agency to review Allen's fiscal conduct relating to the GSA field office leases and his act terminating parking privileges. This parking incident was behind Allen's adverse action and was fraudulently concealed by defendant Allen for over two years to hide his retaliatory conduct from the Plaintiff.

2.      The Department of Health & Human Services (HHS) is the agency responsible relating to the Privacy Act claims. The Secretary is named and is responsible for the acts of Allen and Does relating to all acts of age discrimination and retaliation. Defendants Allen and Does are individually liable for retaliation under the False Claims Act and under the *Bivens* claim. To the extent defendants' conduct extends to times prior to the date the prior age discrimination case was settled, August 1, 2023 (CV-22-01568-PHX-SMB), all

provisions relating to the release of liability for defendants Allen and certain Does, are null and void because of Allen's and Does' deceptive and fraudulent conduct concealing material evidence during, before and after, the settlement agreement was executed and because waivers agreed to by Plaintiff under the Older Workers Benefit Protection Act (OWBPA), 29 U.S.C. Sec. 626(f), are invalid because defendants violated the OWBPA, by withholding material evidence, by adding an illegal provision, by providing inadequate consideration, and by depriving Plaintiff of informed consent.

3.    Defendant McArthur Allen and defendants Jane and John Does are currently employed or were employed at all relevant times in some capacity by the HHS, a federal agency. Defendant Allen at all relevant times was an administrative law judge (ALJ) and later chief ALJ for the Office of Medicare Hearings and Appeals (OMHA), which is part of HHS, being appointed chief judge for the agency on November 8, 2020.

4.    The component agency supports ALJs who hear and adjudicate Medicare appeal cases. OMHA has 11 field offices, a records center in Cleveland, Ohio and a headquarters office located in Arlington, Virginia. OMHA has no field office in Baltimore, Maryland, nor does it conduct mission functions in Baltimore, Maryland, other than receiving cases from that State. All OMHA cases are processed through the Cleveland, Ohio records center and randomly assigned to field offices, and hearings are mostly conducted by VCT or telephone.

5.    For the past three years OMHA has been in a self-imposed hiring freeze and has taken both legitimate and questionable action to reduce its size. This includes offering buyouts to employees, detailing employees to other agencies, and career counseling. Some

questionable tactics have included denying reasonable medical work accommodation requests for medically qualified employees to encourage retirement, and other discriminatory tactics, punitively interfering with and cancelling previously approved budgetary resources, and doubling employees' duties. Defendant Allen's act of terminating parking privileges for judges at field offices was an example of punitive acts deployed to reduce the force.

6.    Plaintiff was an ALJ with the OMHA and was serving as an Associate Chief Administrative Law Judge (ACALJ), the Chief Judge for the Phoenix Field Office. Plaintiff retired on September 30, 2022. Plaintiff filed an age discrimination employment lawsuit against the HHS Secretary, then Secretary Xavier Becerra. (First Lawsuit; CV-22-01568-SMB-PHX). Age discriminatory employment acts suffered by Plaintiff included being the only applicant for the vacant chief judge position in November 2020, who was not initially interviewed for the position, despite being deemed fully qualified by the agency's Human Resources Division. The Plaintiff was approximately 10-24 years older than all applicants selected for interview. Not being selected for the initial interview deprived Plaintiff the opportunity to meet with the Secretary and precluded his consideration. The OMHA attempted to conceal that discriminatory act. Additionally, Plaintiff had been disqualified from an earlier ALJ hiring selection process because he complained to agency diversity officials OMHA did not select for interview any Hispanic descent applicants for ALJ positions at the Phoenix Field Office. None out of the initial 32 applicants selected for interview for the Phoenix Office, and the OMHA refused to interview two highly qualified Hispanic descent applicants recommended by Plaintiff. Since that time the agency has

committed numerous retaliatory, hostile, and discriminatory acts against Plaintiff which are described in the previous complaint and herein because of Plaintiff's disclosure. (CV-22-01568-PHX-SMB, Doc. 1).

7.    The other primary discrete discriminatory act against Plaintiff named in the First Lawsuit is when Plaintiff was placed under investigation by defendant Allen on June 8, 2022, and then placed on investigative leave, on or about June 21, 2022. The notification letters mailed to Plaintiff informing him of the allegation cited to support the investigation, signed by defendant Allen, contained a vague allegation which inferred Plaintiff had committed misconduct by violating OMHA policy which impeded the duties of a subordinate employee, his hearing office director. That position is akin to an office manager and is a management position. The allegation lacked specific information but because it alleged (unnamed) violations of agency rules, instructions, policies, and delegations, the allegation portrayed a serious breach of agency standards of conduct, which Allen used to place Plaintiff on investigative leave. On or about December 10, 2024, in the Second Privacy Act/FOIA lawsuit filed by Plaintiff (CV-24-00417-TUC-RM, Doc. 17), the agency admitted the notice letters were false, inaccurate, and incomplete, by disclosing the real reason for the investigation related to only management acts, which are not defined as employment misconduct under agency regulations and instructions. That was the first time the agency officially acknowledged the investigation was based upon Plaintiff's managerial acts and not misconduct and did not involve violations of policy and rules.

8.    The agency governing employment instructions, HHS Instruction 752, and agency

regulations, 45 C.F.R. Part 73, require some threshold evidence of misconduct to conduct an adverse employment inquiry. If evidence of serious or criminal misconduct exists, formal investigations are to be conducted by the agency's Office of Inspector General (OIG). Plaintiff retired on September 30, 2022, after defendant Allen refused to provide any specific information about the allegation raised against him. Allen also denied Plaintiff's request for OIG to conduct the formal investigation pursuant to the agency instruction. Allen conducted Plaintiff's formal investigation in-house and against agency policy so he could control it. Plaintiff filed his lawsuit prior to retiring. The age discrimination case was settled by Secretary Becerra and Plaintiff on August 1, 2023. The Plaintiff thereafter learned through the later Privacy Act request and lawsuit, Allen concealed material evidence from Plaintiff during the litigation and settlement proceedings to wit: Allen concealed the real purported reason for the investigation, related to only managerial duties naming only one managerial act, that the Plaintiff attempted to pay for his judges' parking privileges at the Phoenix Field office. Providing that material evidence would have significantly strengthened Plaintiff's age discrimination case and would have established the investigation was conducted without any evidence of misconduct.

9.      On May 3, 2024, Plaintiff filed a request to amend and correct certain records relating to Plaintiff's investigation, notably the vague June 8 & 21, 2022, notification letters mailed to Plaintiff from defendant Allen, and a request to access the closed investigation records, pursuant to the Privacy Act, 5 U.S.C. Sec. 552a, which the agency did not timely respond to. Upon receiving no substantive response relating to two access requests over a period of almost two years, from the agency (November 22, 2022 and May 3, 2024),

Plaintiff filed a lawsuit against the HHS, under both the Freedom of Information Act, 5 U.S.C. Sec. 552, for certain property lease records located at 333 Cassell Drive, Baltimore, Maryland, and under the Privacy Act, 5 U.S.C. 552a, for access to his closed investigation records and to correct his records.

10.    This second lawsuit was filed on August 22, 2024 (Second Lawsuit, CV-24-00417-TUC-RM). In the second lawsuit, as indicated, the agency disclosed that defendant Allen had based Plaintiff's investigation upon a false pretense and had failed to provide the Plaintiff with actual notice of the real reason for placing him under investigation. The disclosure by the agency that there was another specific reason for the investigation, not officially disclosed previously, which involved managerial acts and not misconduct, and naming only the parking situation as an example, establishes that the vague notice provided by Allen on June 8, 2022, was false, not accurate and incomplete. The prior notice was intended to mislead Plaintiff, and it did.

11.    Plaintiff was at one point informally informed by an agency senior leader during the investigation that Plaintiff's conduct to request information from the General Services Administration (GSA) relating to parking privileges for his judges was discussed by Allen and certain Does and emphasized that Allen was likely to use and delay the administrative investigation to encourage Plaintiff to retire. This was never confirmed to be the allegation to be investigated, by Allen, the agency, or the two initial employees Allen appointed to conduct the investigation. In fact, Allen denied Plaintiff's request for more specific information, and an appointed investigator informed Plaintiff the only allegation to be investigated was the vague allegation described in Allen's June 8, 2022, letter. Allen

7

therefore deliberately concealed the reason for the investigation, and intentionally deprived Plaintiff of actual due process notice. Moreover, in potential violation of Rule 11, the government denied the relevance of the parking situation and expressly denied managerial acts had anything to do with the investigation, in its Answer in the First lawsuit. (CV-22-01568-PHX-SMB, Doc. 27). Plaintiff became officially aware of the purported "real" reason for the investigation when the agency finally disclosed it on December 10, 2024, in the Second Lawsuit. (CV-24-00417-TUC-RM, Doc. 17). In support of the False Claims Act retaliation claim, in Count 5, recent production of records from the agency in the Second Lawsuit establishes Allen became aware Plaintiff was going to report Allen's conduct terminating parking privileges to an outside agency to review, as Plaintiff was required to do under federal regulations. Federal regulations prohibit supervisors from performing retaliatory action against employees for whistleblower type conduct. 5 C.F.R. Part 752. Allen concealed his conduct to protect himself.

12.     After stalling Plaintiff's correction and access request, the agency denied Plaintiff's correction of records request on August 20, 2024, and on appeal on October 3, 2024, falsely responding that the June 2022, notice of allegation letters were complete and accurate. Plaintiff's correction request sought to amend the notice letter records with a statement to establish Plaintiff had broad office management authority and supervisory authority over the hearing office director position and was in response to the vague notice contained in the initial June 2022 notice letters, since at the time defendant agency had not disclosed Allen's false notice. Recently, Plaintiff discovered HHS attorney Brian Pflaum provided Allen with advice relating to the contents of the June 8, 2022, letter, and had also later

advised agency officials relating to the denial of Plaintiff's request to correct records (August-October 2024). Allen manipulated Plaintiff's lawful post-employment request with support from an agency employee who assisted Allen with concealing the purported real reason for the investigation.

13.    The agency eventually produced some 920 pages of records on or about December 5, 2024, and January 17, 2025, in response to the Second Lawsuit, some of which were responsive to Plaintiff's access request and litigation demand. Plaintiff then voluntarily moved to dismiss the Second Lawsuit access claims without prejudice which the Court accepted. Plaintiff determined the agency's admission of providing false notice and some of the 920 pages of records satisfied his access inquiry to know how the investigation was initiated and conducted, confirming for Plaintiff the investigation was corrupt. Additionally, relating to the access request, Plaintiff viewed the agency's lack of response and candor, and its conduct of casting a wide net identifying over 19,000 "potential" records to be new discriminatory and hostile and retaliatory acts intentionally perpetrated in bad faith to conceal Allen's conduct. Those acts and others constitute post-employment retaliation and harassment. The Plaintiff has re-filed his Privacy Act claim and others because of the continued post-employment retaliation by Allen.

14.    The "new reason" to justify the investigation provided by the agency recited only managerial decisions and did not involve employment misconduct. Specifically, the agency cited Plaintiff's efforts to attempt to contact another federal agency for information relating to parking privileges at the Phoenix Field Office as the primary reason to have initiated a formal employment investigation against Plaintiff, accusing Plaintiff of attempting to

circumvent that decision. Plaintiff's conduct consisted of attempting to find out from the Phoenix office's property agent, the GSA, whether he could pay out of pocket for a few parking spaces after Allen directed the termination of judges' parking privileges at all field offices. Establishing this new reason is a pretext to discrimination and/or retaliation, Plaintiff had advised his supervisor, the Deputy Chief ALJ at the time of his act of contacting GSA, who condoned his conduct. Allen knew Plaintiff did not commit misconduct relating to the parking situation, and that there was no reason to investigate him.

15.    Plaintiff would not have settled the First Lawsuit on the terms agreed to in the age discrimination case, had he known the now purported official and real reason for the investigation offered by the agency. The Plaintiff would not have even retired had he known the real reason for the investigation was the parking situation. Plaintiff's negotiation position, and consequently the settlement agreement itself, was impeded by defendant Allen's false and misleading statements and his concealment of the purported real reason for the investigation. Allen concealed material evidence that would have significantly strengthened Plaintiff's case, and which would have established Allen's conduct was a pretext for discrimination and retaliation.

16.    The concealment of material evidence from Plaintiff by defendant Allen and by Does also deprived Plaintiff of due process adequate notice and impacted on his opportunity to be heard and defend against the investigation. In federal administrative investigations, some notice of specificity of alleged acts, dates, and legal authority is required. Wherever legal rights are impacted, even informal proceedings and

investigations, due process notice is required. It is a fundamental tenet of Constitutional Law. *Amos Treat v. Securities and Exchange Commission,* 306 F.2d 260 (D.C. Cir. 1962). Investigations by federal agencies must be conducted in good faith and not for reasons such as humiliation, political purposes, harassment, or bad faith. *Pennington v. Donovan,* 574 F. Supp. 708 (S.D. Tex.).

17.     Defendant Allen, on or about January 2025, in an agency EEO decision was found by HHS to have discriminated against another former Phoenix judge based upon her disability, by denying her reasonable medical accommodation. The agency decision determined defendant Allen had constructively discharged the Judge and ordered her reinstatement with full back pay and compensatory damages. It also ordered defendant Allen to attend remedial EEO training, and for formal notice that Allen committed discrimination to be posted within the agency. Defendant Allen has a pattern of discriminating against employees and has been obsessed with reducing the OMHA work force. That judge is 67years old. Federal case law allows discrimination findings against other employees to be admitted as evidence in discrimination cases.

18.     Under the OMHA's enacting legislation and organizational structure, management judges, in particular field office chief judges, have broad management and discretionary authority and are the focal leadership point for completing the OMHA's mission. (Complaint Ex. 1). The OMHA failed to follow this legally mandated structure in recent years by illegally limiting management judge authority, without Secretarial approval, and by placing more authority under administrative officers called hearing office directors (HODs). The agency allowed HODs to interfere in hearing process functions and to impede

judicial independence, in violation of the enacting organizational structure.

19.     Contrary to the organizational structure, the HODs were placed under the supervision of Ms. Karen Ames, who serves as the OMHA Director of Operations and Program Integrity since 2015, and who assisted defendant Allen in the investigation of Plaintiff. Ms. Ames has been provided with a second office space at 333 Cassell Drive, Baltimore, Maryland, address, which was the subject of Plaintiff's May 3, 2024, FOIA request for property records. OMHA employee Daniel Kahane worked for Ms. Ames and was put in charge of overseeing Plaintiff's investigation. It is believed that Mr. Kahane has been allowed to work from Tampa, Florida, where he resides, and did not have to report back to OMHA headquarters after the pandemic, like other employees. The OMHA Program Integrity Division is not defined nor authorized in the enacting legislation or organizational structure and duplicates other HHS offices which handle labor relations functions.

20.     Plaintiff accelerated his retirement because of the investigation and because defendant Allen refused to provide specific notice of the allegation, despite Plaintiff and his attorney requesting that information. The Plaintiff was informed that the vague allegation notice was standard practice for the Program Integrity Division. Historically, the Program Integrity Division had investigated several management judges when they tried to reclaim authority, or follow the legally mandated enacting organizational structure, or for any action the Program Integrity Division did not like. This included a former Deputy Chief ALJ and an assistant to the former Chief ALJ over a dispute relating to interpersonal communications. It is widely known throughout the OMHA that the OMHA Program

Integrity Division proposed a 90-day suspension against one HQ management employee to coerce her into retiring. Using coercive tactics has been the modus operandi for the OMHA Program Integrity Division, which has regularly used formal investigations it could control in violation of HHS policy. (HHS Instruction 752).

21.    Plaintiff and then Secretary Becerra settled the First Lawsuit on August 1, 2023. The settlement agreement contained provisions that stated no adverse findings from the investigation were made against Plaintiff and that no entry relating to the investigation would be made in Plaintiff's official personnel files. The agreement also provided the closed investigation records were located on the OMHA IT server and consisted of witness statements and other related documents accumulated in the investigation. The settlement agreement stated the agency would keep the investigation records in a secured location within the HHS Office of General Counsel.  At no time did agency officials or Allen officially inform Plaintiff of the real purported reason for the investigation prior to execution of the settlement agreement, and not until December 10, 2024.

22.    In the settlement agreement defendant Becerra recited that it was the agency's position that it conducted its investigation of Plaintiff in good faith. Neither the Secretary, nor any of his delegates, nor the signatory for the Secretary on the settlement agreement and release, or other agency employee or agency representing attorney, officially informed Plaintiff of the false nature of the allegation notice he had received from defendant Allen, nor that the purported real reason for the investigation was the parking situation and other (unnamed) managerial decisions. No other managerial act has ever been noticed or disclosed by the agency, Allen, or Does, not even in any initial disclosure statement in two

lawsuits. As indicated, the government went so far as to formally deny managerial acts were the reason for the investigation in its previous Answer. (CV-22-01568-PHX-SMB, Doc.27). This pattern of concealing material evidence and by manipulating the legal process constitutes post-employment harassment and retaliation.

23.    Moreover, the agency has engaged in additional age discrimination and retaliation by not fulfilling its responsibility under the settlement agreement, post-employment, and by committing other retaliatory acts. In the Privacy Act lawsuit, contrary to the express terms in the agreement, the agency claimed the "no findings" provision was because Plaintiff retired, falsely inferring it had accumulated evidence of misconduct committed by Plaintiff. Moreover, the agency stalled Plaintiff's request for access to records indicating the closed investigation records were scattered amongst more than 19,000 documents throughout the agency. The disclosed 920 pages of the produced records established the agency cast a wide network relating to events within the Phoenix Field office completely outside the scope of the request and responded with records which spanned over several years before the investigation, intentionally attempting to be non-responsive to the access request.

24.    Of the 920 pages of records Plaintiff received from the agency pursuant to his access request for the closed investigation records, only about 100 were responsive. Most of the records produced were related to numerous management decisions which occurred years before the investigation and most involved unrelated matters including the Plaintiff's supervision of a low producing employee and another staff judge, who had numerous serious complaints raised against her by her legal assistant, which Plaintiff was not fully

privy or involved with at the time. The response confirmed for Plaintiff that Ms. Ames and the Program Integrity Division keep dossiers on its management judges without providing Privacy Act notice, and beyond record retention destruction deadlines. Moreover, the agency knowingly and wrongfully designated certain confidential settlement related discussions and draft agreements at the administrative investigation stage as public information releasable under FOIA, in a threating manner to intimidate, retaliate against, and harass Plaintiff, post-employment. Federal case law holds such acts, threats, and harassment are considered post-employment discrimination and retaliation and constitutes new adverse action.

25.    The settlement agreement release expressly excludes acts which occur after the date of execution of the settlement agreement, which is required by the OWBPA, part of the Age Discrimination Employment Act (ADEA), 29 U.S.C. Sec. 621, Sec. 633a, Sec. 626(f), *et al.* The OWBPA is intended to prevent retaliation and future discrimination. Federal and Arizona law provides that settlement agreements and releases which are based upon deception, overreach, fraud or misrepresentation, may be voided by the aggrieved party. The Plaintiff was not officially made aware of the false notice until about December 10, 2024, during the Privacy Act Second Lawsuit, wherein it was disclosed in a judicial admission by defendant agency, HHS.

26.    The release from liability in the previous settlement agreement is not enforceable because defendant Allen committed deceptive, misleading, and fraudulent acts and omissions by providing false notice of the allegation to Plaintiff and he further concealed the purported real reason for the investigation. The false notice allegation letters were

central and material to the administrative investigation and age discrimination claims raised in the First Lawsuit, and in adopting the settlement agreement and the release. Defendant Allen signed false statements on at least two occasions which he mailed across State lines to Plaintiff, in violation of federal law. These false letters were first sent to Plaintiff on June 8, 2022, and then on June 21, 2022, and others through September 2022 by defendant Allen or by the Deputy Chief Administrative Law Judge, Jonathon Eliot, on behalf of defendant Allen, extending the investigative leave.

27.   Defendant Allen, as assisted by defendants Does, drafted, signed, mailed, and provided false notice of the allegation to Plaintiff, which included mailing the false statements by United Parcel Service, UPS, to Plaintiff, in Pima County, Arizona. The investigation was initiated by defendant Allen, under false pretense. Defendant Allen concealed the false nature of the allegation notice and concealed the real purported reason(s) for the investigation through December 10, 2024. The Plaintiff received no due process notice relating to the parking situation or any of the other unnamed managerial decisions the agency claimed supported the investigation. The Plaintiff's attorney for the administrative investigation received only the false notice. Witnesses during the investigation did not receive notice of the real reason for the investigation.

28.   The wrongful acts and omissions and age discrimination and retaliation extended beyond the date of the execution of the settlement agreement and release. The concealed information was material evidence and was not disclosed during the investigation or during the age discrimination, First Lawsuit. The denial of Plaintiff's correction request by agency officials occurred after the date of the execution of the settlement agreement and release

(May 2024-October 2024). The HHS attorney and investigator who provided recommendations for Allen to provide inaccurate and incomplete information in the June 8, 2022, notice letter, also advised agency privacy officers to deny Plaintiff's correction of records request. Plaintiff was discriminated and retaliated against and denied an independent review. Plaintiff complied with EEO procedures when he became aware of Allen's conduct concealing material information, and filed his new age discrimination claim with the agency on January 8, 2025. Allen had a conflicted employee, Ms. Ames, who was involved in the investigation and head of the OMHA Program Integrity Division, acted as the deciding official to deny any attempt to resolve Plaintiff's informal EEO complaint. The Plaintiff was again denied an independent review and discriminated against and retaliated against post-employment. These acts constitute further post-employment harassment, discrimination and retaliation, and adverse action.

29.    Defendant Allen had a duty to disclose the purported real reason for the investigation to the Plaintiff. Allen was the agency approval authority to initiate an investigation and any proposed adverse action, and therefore had a legal, constitutional, regulatory and ethical obligation to provide Plaintiff with due process of law and provide an accurate and complete description of the allegation to support the investigation. At the very least, Allen had a duty NOT to mislead Plaintiff. Defendant Allen had a confidential relationship as that term is defined by law, with Plaintiff as a supervisor and manager with overall responsibility over the agency, the investigation, and agency ethical obligations, and a duty to reveal the false statements he made to the Plaintiff under federal regulations, including HHS Instruction 752 (disciplinary employment process), 5 C.F.R. Sec. 2635.101

*et al.* (basic obligations of all federal employees) and 45 C.F.R. Part 73, *et al.,* (HHS standards of conduct). Allen is required by federal regulations to follow the Constitution and federal laws and has a heightened ethics obligation as the head of the OMHA. 5 C.F.R. Sec. 2635.101(11) & (14); 5 C.F.R. Sec. 2638.103 (ethical obligations). Under Federal Court rules, F.R.Civ.P. 26(a)(1), OMHA had a duty to disclose relevant information to Plaintiff in an initial disclosure statement, in two lawsuits. It did not.

30.     Plaintiff signed the age discrimination settlement agreement on June 10, 2023. The Secretary's initial disclosure statement in the First Lawsuit was due on or before June 5, 2023. No official notice of the real purported reason for the investigation was provided to Plaintiff, prior to his signing the settlement release. Making false statements and concealing material evidence is not within the lawful scope and duty of the chief ALJ position. Allen is not entitled to qualified immunity.

31.     Certain defendant Does committed acts to assist defendant Allen in misleading and concealing this material evidence by committing certain acts or omissions. Does concealed the real reason for the investigation during the entire 4 months Plaintiff was under investigation and during the entire age discrimination litigation, and thereafter. Plaintiff was informed by the investigators appointed by defendant Allen to conduct the investigation, that the scope of the investigation involved only that vague allegation contained in defendant Allen's June 8, 2022 "false" notice letter. Does advised Allen relating to the investigation including recommending the contents of the June 8, 2022, notice letter, and denying Plaintiff and his attorney more specific information relating to the allegation.

32.    There are three relevant time periods: One, the period from June 8, 2022, the date Plaintiff received the first false, misleading, and incomplete notice of allegation letter and placed upon administrative and investigative leave, through September 30, 2022, the date Plaintiff retired. Two, the period after September 30, 2022, through August 1, 2023, the date Plaintiff and Secretary Becerra entered into the settlement agreement of the previous age discrimination lawsuit. Three, the period from after August 1, 2023, through December 10, 2024, the date the HHS admitted in the Second Lawsuit, the notice of allegation letters provided to Plaintiff from defendant Allen, were false, inaccurate and/or incomplete and misleading. Additionally, Allen and Does, continued to conceal their past conduct and committed further acts of age discrimination and retaliation by harassing Plaintiff and interfering with the agency's EEO informal process, even after December 10, 2024, after Plaintiff administratively filed his January 8, 2025, new EEO claim with the agency. This consisted of appointing conflicted employee, Karen Ames, as the agency official tasked to determine if the agency would resolve the Plaintiff's new EEO claim at the informal level and attorney Brian Pflaum being appointed to advise HHS privacy officers to deny Plaintiff's claim for correction. Both constitute further adverse actions and post-employment retaliation.

33.    Defendant Allen's fraudulent conduct includes the false notice letters he signed and mailed to Plaintiff across State lines, his acts of concealing the false notice, and concealing the real reason for the investigation, and his act of concealing material evidence from Plaintiff during the First Lawsuit and afterwards. Plaintiff was not a federal employee during periods two and three and had no personnel relationship with defendant Allen or

Does, after period one. Allen had a continuing duty to disclose false statements since it continued to negatively impact Plaintiff, which included the agency maintaining inaccurate information in the closed investigation records, which impacted and harmed Plaintiff's employment and economic opportunities.

34.    Under 18 U.S.C. Sec. 1001, false statements and concealing false statements are separately and criminally actionable. 18 U.S.C. 1341, prohibits sending false statements through the mail to accomplish any fraudulent scheme or purpose, which definition of mail includes UPS and other commercial delivery services, which Allen used.

35.    Both the June 8, 2022, and June 21, 2022, notice of allegation letters falsely, inaccurately, and incompletely stated Plaintiff was being investigated for the following allegation:

> **"due to complaints that your actions as the Associate Chief Administrative Law Judge (ACALJ) of the Phoenix Field Office have violated the Office of Medicare Hearings and Appeals' (OMHA's) delegations of authority (e.g., with respect to the lines of authority established in OMHA's organizational chart and in other policies/rules/instructions) and interfered with the functions of OMHA's operations and the Phoenix Hearing Office Directors (HOD), resulting in a negative and disruptive work environment."**

36.    The false notice led Plaintiff to believe the investigation was based upon the OMHA's historical deviations from the enacting organizational structure and misled Plaintiff and impaired Plaintiff's ability to defend against the investigation. Allen directed two appointed investigators, Judges Tim Stewart and Laruen Tran, to use this vague false notice to conduct its investigation. The Plaintiff received notice on June 9, 2022, from appointed investigator Judge Stewart that the notice of the allegation he had received from defendant Allen was the entire subject matter and scope of the investigation. Upon

information and belief, some of the appointed investigators who took witness statements during the investigation have made statements on the record that the investigation was void of any substance and that the evidence they accumulated resulted in no adverse findings against Plaintiff, or words to that effect. One investigator described the investigation as "BS."

37.    The Plaintiff requested more specific information relating to the letter dated June 8, 2022, from Allen including as to what delegations and policies he allegedly violated, and what acts he allegedly committed, as well as how his conduct allegedly impeded the duties of his hearing office director who was a subordinate to Plaintiff. That request was denied by defendant Allen. Plaintiff's supervisor, then acting Deputy Chief Judge Jonathon Eliot, informed Plaintiff of defendant Allen's denial in late September 2022, approximately one week before Plaintiff's scheduled investigative interview. The Plaintiff also requested the HHS Office of Inspector General to conduct any investigation, which is standard agency procedure according to an authoritative agency employment instruction, HHS Instruction 752, but defendant Allen further denied that request. Had the investigation been elevated to OIG, Plaintiff would have received adequate due process notice and process protections as required by HHS regulations.

38.    On or about December 10, 2024, in the joint report for case management recommendations, filed with the Court in the Privacy Act lawsuit (Second Lawsuit, CV-24-00417-TUC-RM, Doc. 17) the HHS admitted the allegation against Plaintiff to support an investigation was something entirely different restating that the investigation against Plaintiff was initiated because he allegedly: **"attempted to circumvent OMHA's senior**

**leadership's decision to terminate paid parking privileges at the Phoenix Field Office and other (unnamed) management reasons."** The two notices cannot be reconciled, and defendant Secretary in the previous age discrimination case had previously denied managerial acts were the reason for the investigation. (Cv22-01568-PHX-SMB, Doc. 27).

39.    The investigation was therefore NOT initiated because of potential employment misconduct, for violating organizational structure, or for impeding his hearing office directors' duties, or for violating delegations, rules, instructions, or policies, which were never named. The parking situation involved Plaintiff's free and protected speech, consistent within the scope of his legally authorized management duties, to attempt to contact GSA officials, who managed the field office and parking lot, to determine whether he could legally pay out of pocket for a few parking spaces for his judges to share, after Allen ordered the termination of parking privileges, despite it being a contracted budgetary approved item, and provided for and covered in the GSA field office building lease.

40.    Parking was a safety issue at the Phoenix Federal Building because ALJs have been targeted in the past by disgruntled claimants, and after two known assaults at Phoenix Federal buildings. Plaintiff had broad and discretionary management authority to act for the welfare of his employees under the enacting organizational structure. (Complaint Ex. 1). Plaintiff had timely briefed his supervisor about his intent to contact GSA, Deputy Chief Judge Jonathon Eliot, who supported and condoned the effort, and offered to help Plaintiff. The Plaintiff was never ordered to not contact GSA. Plaintiff was later informed by Judge Eliot that OMHA employee Ms. Ames wanted the meeting with GSA cancelled, which Plaintiff promptly complied with. The Plaintiff requested to discuss the parking situation

with defendant Allen, but that meeting was never arranged.

41.    The parking situation drew attention to an arrangement defendant Allen had approved on behalf of Ms. Ames, which secured a second office for her near her home, the 333 Cassell Drive, Baltimore, Maryland, office building, so she would not have to commute to OMHA headquarters every day in Arlington, Virginia. This employment preference was brought up for discussion at a senior leadership meeting by the Plaintiff. Office morale suffered because employees believed parking was terminated to pay for Ms. Ames' second office. Pursuant to 5 C.F.R. Sec. 2635.101(6), (8), (9), (11), & (14), Allen had a duty not to grant employment preferences, to use government property only for mission needs and not invalid purposes, and to report fraud, waste, and abuse, and corruption, not to participate in it.

42.    On June 7, 2022, Plaintiff informed his supervisor, Judge Eliot, that he had serious concerns about Judge Allen's conduct of interfering with and terminating an approved item in the OMHA budget and GSA lease, and about a possible employment preference for Ms. Ames. The Plaintiff informed Judge Eliot he was going to contact an outside agency to review defendant Allen's recent fiscal conduct. The Plaintiff was placed under investigation the next day by defendant Allen. Documentation of correspondence relating to those communications was produced in response to Plaintiff's Privacy Act request establishing agency officials and Allen were aware of Plaintiff's intent to participate in whistleblower protected activity.

43.    HHS Instruction 752 directs employment disciplinary inquiries and requires the HHS Office of Inspector General (OIG) to conduct formal investigations, if necessary, and

only upon evidence of some serious misconduct. Otherwise, employment inquiries are to be made by supervisors informally, not formal investigation. The Instruction lists sample areas and items of misconduct. Moreover, 45 C.F.R. Part 73 contains the agency's standards of conduct, which also lists and defines misconduct, and provides guidance and regulatory duties. Seeking information from another federal agency is not misconduct under the instruction or regulations, nor other federal regulations.

44.     Managerial decisions are also not listed as misconduct under HHS instructions and regulations and OMHA has a separate policy that directs management disputes are to be resolved informally and in-house, at OMHA AP 2019-2 and AP 2022-3, which defendant Allen failed to comply with. The Plaintiff had a protected free speech right to contact another federal agency for information related to agency practices and for the welfare of his employees. The agency is required to follow its regulations, instructions, and policies. Plaintiff could have and would have successfully defended against the purported real reason for the investigation involving the parking situation. Concealing Allen's conduct gave the agency an advantage in settlement discussions as disclosure would have been strong evidence of Allen's discriminatory conduct.

45.     The agency denied Plaintiff's May 3, 2024, request for correction of records on August 20, 2024, and upon appeal, on October 3, 2024. Plaintiff's correction request statement sought to complete and make more accurate the nature of the investigation and described Plaintiff's authority and duty to follow the enacting organizational structure. Since Plaintiff was not yet aware that defendant Allen had falsified the notice of allegation he provided Plaintiff, Plaintiff addressed what he thought was the delegation and policy

issue relating to management judge authority, set forth in the broad false June 2022 notice

letters. The proposed correction process is set forth under the Privacy Act, at 5 U.S.C. Sec.

552a (d)(2)-(5).

46.    The amending statement submitted by Plaintiff read as follows:

"The OMHA's organizational structure was adopted in the agency's enacting legislation and is published in the Federal Register and reported to the public and Congress, at Chapter AK to MMA, Part A, Ch. AA, Sec. AA.10, Pub. L 108-173 (2003), United States, Health Human Services, "Statement of Organizational Structure." 70 Fed. Reg. 120 (June 23, 2005) and 76 Fed. Reg. 69 (April 11, 2011). It provides that Associate Chief Administrative Law Judges (ACALJs) for OMHA Field Offices, have full authority to lead, guide, direct and manage all staff and that hearing office directors (HODs) positions, are limited to providing administrative support, are subordinates to and report to the ACALJs position, and are expressly prohibited from interfering with or participating in hearing process functions. For several years the agency, without approval from the Secretary, deviated from the enacting organizational structure by attempting to vest HODs with authority over hearing process functions. The ACALJ position is responsible for all hearing process functions within field offices and has authority to intercede with HOD duties when necessary for the welfare of employees, to maintain the integrity of hearing process functions, and to accomplish the mission. Judge Cianci maintains that he properly followed the legally enacted organizational structure to the extent practicable at all times. Judge Cianci filed a lawsuit in Federal Court against Secretary Xavier Becerra, in his official capacity as head of the Department of Health & Human Services (HHS), for age discrimination pursuant to 29 C.F.R. Sec. 633a. (CV2022-01568-SMB-PHX), arising from the investigation. The lawsuit was equitably settled between Secretary Becerra and Judge Cianci on or about August 1, 2023. Pursuant to the terms of the settlement, a copy of the settlement agreement is to be placed with any investigation records maintained by the HHS, pending destruction in accordance with records retention rules. The settlement agreement provides that no adverse findings were made against Judge Cianci and that his official personnel records did not contain any references to the investigation. The settlement also paid Judge Cianci suitable damages."

47.    Plaintiff was not yet aware defendant Allen had provided false notice, nor of Allen's

extensive efforts to conceal his conduct, including concealing the real purported reason for

the investigation. The Plaintiff would have demanded reinstatement in settlement

discussions had he known the real reason for the investigation. Moreover, after being denied a formal records correction by the agency, Plaintiff requested the denied correction statement be added to his closed investigation records as a statement of disagreement. This is a right under the Privacy Act and defendant Allen, through HHS attorney Brian Pflaum, indicated to Plaintiff on or about October 3, 2024, he attached the statement of disagreement with the June 8, 2022, notice letter to the closed investigation records. Establishing the agency deliberately stalled Plaintiff's lawful request for records, which constitutes harassment, discrimination, and retaliation, Pflaum was readily able to access the closed investigation records at OGC without searching through 19,000 records.

48. The statement of disagreement has less legal effect and significance than the agency formally correcting the records and acknowledging the inaccuracy in the records. Since the purported new reason for the investigation was not known to Plaintiff at the time the statement of disagreement was filed, the statement of disagreement is largely insignificant and of no value to Plaintiff since it does not address the purported real reason for the investigation. Pflaum admits he advised Allen relating to the contents of the June 8, 2022, notice letter to agency EEO counselor E. Jones in a February 2025 interview. Neither defendant Allen nor Mr. Pflaum informed Plaintiff in October 2024, or at any other time, that the June 8, 2022, notice of allegation letter was false, inaccurate, or incomplete, or the real reason for the investigation related to the parking situation.

49. The agency's admission in the joint report constitutes judicial admission and is binding upon the defendant agency, Secretary Kennedy, and defendants Allen and Does. Defendant Allen further admitted to Ms. Jones in his interview he did not notify Plaintiff

that the real reason for the investigation was the parking situation. More acts of misrepresentation and concealment which establishes post-employment harassment, discrimination, and retaliation, include the denial of Plaintiff's request to correct his records, by Principal Deputy General Counsel Rachel Park, on or about August 20, 2024, and Deputy Chief Privacy Act Officer William Holzerland, on or about October 3, 2024, on the basis the records were accurate. Two months later the agency admitted in its December 10, 2024, judicial admission that the June 2022 letters were not accurate.

50.    The release of liability provision contained in the previous age discrimination settlement agreement, relating to defendant Allen and defendant Does, violates the OWBPA and was based upon deception, overreach, fraud and misrepresentation and Federal and Arizona case law dictates it is unenforceable. *X-Cel Sales LLC v. A.A. Smith Corporation,* 2012 WL 273693 (D. Ariz. 2012); *Dansby v. Buck*, 92 Ariz. 1 (1962); and, *Living Designs, Inc. v. Plant Exchange, Inc.*, 431 F. 3d353 (9th Cir. 2005). Courts generally look to the State law to review releases and settlements, and Arizona has long held fraud, deception, and misrepresentation are grounds to void a release and/or settlement. The release is null and void. Here, Federal case law has ruled that the Older Workers Benefit Protection Act (OWBPA) prohibits fraud and deception and requires knowing and informed waivers. Informed consent is required.

51.    Plaintiff's decision to retire and then settle his previous age discrimination claim was based upon deceptive, fraudulent, and misrepresented statements, which statements and acts by Allen were material, and which were concealed from Plaintiff by defendants Allen and Does, and who concealed the real reason for the investigation. Under the

OWBPA Plaintiff retains the benefit of the bargain originally signed but is allowed to pursue additional damages and relief because of defendants' violations of the OWBPA. Reinstatement to his former position is warranted here with full back pay. Plaintiff may litigate all his ADEA claims and is not barred by the release. The release is null and void.

52.    The remedy for reinstatement should have been addressed in the settlement agreement, and would have been, had Allen and Does not acted tio conceal material evidence since the new reason purported by the agency did not constitute employment misconduct, and the agency falsely took the position that its investigation had been conducted in good faith.  Denying basic due process notice is not good faith. Moreover, the Secretary would have been under an obligation to reinstate Plaintiff and to have taken disciplinary action against defendant Allen for his fraudulent and discriminatory conduct, pursuant to agency and federal regulations. 5 C.F.R. Sec. 752.101, *et al.* (retaliation by supervisors' provisions). Disclosing the real reason for the investigation would have provided Plaintiff the opportunity to seek this redress from the Secretary.

53.    By not officially revealing the false nature of the allegation notice and the real reason for the investigation, Allen created a false aura of serious misconduct which he used to support placing Plaintiff upon investigative leave, and post-employment retaliation he ensured the agency continued to maintain inaccurate and incomplete records, which has negatively impacted Plaintiff.

### THE PARTIES

54.    Plaintiff incorporates by reference all preceding paragraphs alleged herein.

55.    Plaintiff is the former Phoenix Field Office Chief Administrative Law Judge for the

Office of Medicare Hearings and Appeals and served in that capacity for four years, having retired on or about September 30, 2022, accelerating retirement because of the investigation. He was an ALJ for three agencies for 21 years. He is a retired military reserve officer and had 36 years of serving with the federal government at retirement. The Plaintiff is a resident of Arizona, with residence and domicile in Pima County.

56.    The HHS is a federal agency located at 200 Independence Ave., S.W., Washington, D. C. 20201. The agency is the properly named defendant in a Privacy Act lawsuit pursuant to 5 U.S.C. Sec. 552a(g).

57.    Robert Kennedy, Jr. is the Secretary of HHS, and is the properly named defendant in an ADEA case pursuant to 29 U.S.C. Sec. 621 and Sec. 633a, *et al.*

58.    Defendant Allen is a resident of Virginia and serves as OMHA's Chief ALJ with his office and headquarters in Arlington, Virginia. Defendant Allen is being sued in his individual capacity and official capacity. Defendant Allen's conduct herein while purporting to be within his duties was in large portion performed outside his official scope of lawful duties, and he discriminated against Plaintiff because of age, committed constitutional torts and retaliated against Plaintiff, and committed potentially criminal conduct, which includes violations of 18 U.S.C. Sec. 1001 and Sec. 1341.

59.    Defendant Does are fictious names of individuals who are believed to have committed wrongful acts and omissions against Plaintiff by concealing material evidence, and who have assisted and aided and abetted defendant Allen relating to adopting and providing false notice of the allegation to Plaintiff and for other acts concealing the purported "real" reason for the investigation, and who concealed material evidence from

Plaintiff. This includes having knowledge and committing acts and omissions to conceal such actions by Allen, and that Allen retaliated against Plaintiff under the False Claims Act and the ADEA.

## JURISDICTION AND VENUE

60.    Plaintiff incorporates by reference all the preceding paragraphs alleged herein.

61.    This Court has jurisdiction over subject matter pursuant to 28 U.S.C. Sec. 1331 (Federal and Constitutional law questions) and pursuant to the Privacy Act, at 5 U.S.C. Sec. 552a (d) 1-5 & (g), including (g)(1)(A),(C)&(D), *et al.* Jurisdiction is established under the Age Discrimination in Employment Act, pursuant to 29 U.S.C. Sec. 621, 633a, *et al.*, and under the Older Workers Benefit Protection Act pursuant to 29 U.S.C. Sec. 626(c) & (f). Jurisdiction is also established pursuant to the whistleblower retaliatory provisions in the False Claims Act, 31 U.S.C. Sec. 3729, *et al.* Jurisdiction is further established under the Due Process Clause in the Fifth Amendment, and Equal Protection, under the equal protection component of the Due Process Clause, under the Fifth Amendment; pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971) and *Davis v. Passman*, 442 U.S. 228 (1979), and 28 U.S.C. Sec. 1343 (Civil Rights Violations), 28 U.S.C. Sec. 2201, authorizes declaratory relief and judgment. Ancillary and supplemental jurisdiction and state and federal common law supports all claims founded in evidence of fraudulent misrepresentation and concealment to the extent necessary to establish an independent jurisdictional basis. 28 U.S.C. Sec. 1367. Venue is established pursuant to 28 U.S.C. Sec. 1391(b)(2) & (e)(1)(C), and LRCiv 77.1.

62.     Defendant Allen and defendant Does have committed substantial acts, impacts, harm, and omissions, to occur in the State of Arizona, and in particular Pima County. The age discrimination acts and impacts, and harm took place in Pima, County, Arizona. Defendant Allen served Plaintiff by mail with the false June 8, 2022, and June 21, 2022, notice of allegation letters, in Pima County, Arizona, thus impacting Plaintiff and initiating the investigation against him. The settlement agreement from the First Lawsuit was signed in Arizona. The Plaintiff signed it in Pima County, Arizona. The investigation was largely conducted in Arizona, and witnesses were interviewed in Arizona. The false statements were sent using the United States mail process as defined in 18 U.S.C. Sec. 1341, pursuant to a commercial service, UPS, to Plaintiff's residence in Pima County, Arizona.

63.     Plaintiff contacted the GSA regarding the parking situation, which the defendant agency has now admitted was the real reason for the investigation. and attended telephonic senior leadership management meetings from Pima County, Arizona. Plaintiff further reported to his supervisor from Pima County, Arizona, he was going to report the OMHA's improper, fraud, waste, abuse, and corruption type conduct to an outside agency, which prompted defendant Allen to further retaliate against Plaintiff. The Plaintiff served his administrative and investigational leave and submitted his retirement papers to the agency in and from Pima County, Arizona.

64.     During the 4 months Plaintiff was on investigative leave he was ironically approved for reasonable accommodation to telework full time from his home in Pima County, Arizona, due to his hypertensive medical condition, which defendant Allen and his supervisor, acting Deputy Chief Judge Jonathon Eliot were fully aware of. See *X-Cel Sales*

*LLC v. A.A. Smith Corporation,* supra, where Judge Murray Snow held that causes of actions may arise and jurisdiction (and venue) may be established where the impact or harm from tortious or wrongful type conduct and contract breaches, take place.

## STATEMENT OF THE CASE

65.    Plaintiff incorporates by reference all preceding paragraphs alleged herein.

66.    All counts in the Complaint are sounded to some degree in fraud in that the evidence will establish Allen's age discrimination and retaliation, constitutional due process violations, retaliation under the False Claims Act, and violations of the OWBPA. All involve acts wherein Allen made false, deceptive, incomplete, and misleading statements relating to the notice of allegations he provided Plaintiff to justify the investigation and to place Plaintiff on investigative leave. Allen then fraudulently attempted to conceal the false nature of the statements and the real purported reason for the investigation. Allen's conduct is relevant to all counts. His acts of concealing material evidence establish the willful and deliberate conduct to support Plaintiff's Privacy Act claims. The evidence of fraud is relevant to any affirmative defense relating to the release of liability relating to the previous settlement, the OWBPA, and to any defense of qualified immunity. Allen's acts provide overwhelming evidence to support age discrimination relating to both the ADEA and the *Bivens* claims and his motivation to retaliate against Plaintiff under the False Claims Act retaliation provisions.

67.    To the extent acts occurred prior to the execution date of the prior settlement agreement, the settlement release is null and void because of Allen's fraudulent conduct and violations of the OWBPA. The release is further null and void because Allen's conduct

violates the OWBPA protections and his acts of concealing from Plaintiff the real purported reason precluded Plaintiff from executing a knowing and voluntary waiver to release liability since Plaintiff did not have informed consent, even without establishing fraudulent conduct. Other violations of the OWBPA are set forth in Count 6.

68.    Pleading the fraud and deception with particularity where applicable pursuant to F.R.Civ.P. 9(b) the elements of fraud are: a representation, which was false, materiality, defendant knew the representation was false when made, scienter, injured party did not know of falsity, injured party relied on the representation, injured party had a right to rely on the representation, and causation and injury. Here, defendant Allen committed certain fraudulent and deceptive acts, which included as previously indicated: he signed false, misleading, and incomplete statements for the purpose to mislead Plaintiff and commit a fraud upon Plaintiff, on at least two occasions, June 8, 2022, and June 21, 2022, which he mailed to Plaintiff across State lines, informing Plaintiff of false, misleading, and incomplete notice of the allegation to support an employment investigation, and fraudulently misrepresented Plaintiff's employment duties, and falsely placed Plaintiff under investigation and on investigative leave under a false pretense. Allen continued to fraudulently conceal those acts. Allen never informed Plaintiff of the real purported reason for the investigation before December 10, 2024.

69.    Here, the evidence is fraught with fraud. The false pretense included informing Plaintiff that Plaintiff was being investigated for allegedly violating unnamed agency policies, rules, instructions and delegations and for impeding the duties of another employee, which negatively impacted the operations of the agency, which Allen knew at

the time the notice letters he sent to Plaintiff were false and misleading and not complete, and that the purported reason was not the real reason for placing Plaintiff under investigation.

70.    The real purported reason was concealed fraudulently by misrepresentation and omission and continued to be misrepresented and fraudulently concealed until the agency made a contrary judicial admission on or about December 10, 2024. The admission disclosed that Plaintiff was placed under investigation because of his management decision to contact another federal agency for information about the parking situation at the Phoenix Field Office, and other never-identified managerial acts. The newly disclosed allegation claimed Plaintiff attempted to circumvent Allen's decision to terminate parking. Had Plaintiff been noticed properly he would have participated in the investigation and provided evidence to rebut the allegation. Extensive evidence was available to rebut that allegation. Moreover, Plaintiff would not have settled his first lawsuit had he known the real reason for the investigation. Disclosure during the first litigation would have significantly strengthened Plaintiff's case. Disciplinary employment inquiries cannot be based upon discretionary managerial decisions according to agency policy and regulations, without evidence of actual misconduct. See HHS Instruction 752; 45 C.F.R. Part 73. The fraud included earlier denials by defendants in pleadings that managerial reasons were not the basis for conducting the investigation. Those pleadings have never been amended or corrected by the government. (CV-22-01568-PHX-SMB, Doc. 27).

71.    The false allegation was not the real reason for the investigation and which Allen used as a pretext to place Plaintiff under investigation and on investigative leave, and which

purposely inferred a more serious act of employment misconduct, and which Allen knew at the time to be false, and knowing Plaintiff was not in a position to know or ascertain the false nature of the statement and that Plaintiff had a right to rely on Allen's representation. Allen was the approving authority and head of the agency and was privy to Plaintiff's management decisions. Allen had knowledge of Plaintiff's lawful act to contact an outside agency for information after Allen's act to terminate paid parking privileges at the Phoenix office. Defendant Allen sent the false statements through the mail process to Plaintiff's home in Pima County, Arizona, to investigate Plaintiff under a false pretense. The representations in the letters were material and contained due process notice of an allegation to support an investigation in which plaintiff was required to participate, and which impacted his legal and property rights.

72.    Defendant Allen was also aware of the parking situation and knew Plaintiff had a meeting scheduled with GSA officials, which he interfered with, allowing it to be canceled, to the detriment and welfare of the Phoenix ALJs. The EEO interviews in February 2025, establish Allen discussed the notice of allegation letters carefully with certain defendants Does, and Allen decided to provide Plaintiff with a broad and vague, false and misleading notice of allegation he knew Plaintiff could not defend against, based upon consultation with Doe Pflaum. The statements contained in the June 8, 2022, letter were material and intended to deceive and mislead Plaintiff and for Plaintiff to rely on the false notice, and to impede any defense and to encourage retirement, and/or to constructively have Plaintiff discharged. The June 8, 2022, letter was designed to be misleading and lack specificity and cited no act or legal authority, or violation, to support the investigation. The Plaintiff did

not officially know of the false nature of the allegation, received no other official notice to the contrary, and had justification to rely on the false notice allegation letters since defendant Allen was in his immediate chain of command and his second level supervisor, and head of the OMHA, and defendant Allen is vested with authority to oversee the OMHA Program Integrity Division, which led the investigation.

73.     Defendant Allen placed Plaintiff on investigative leave to support his false statement that Plaintiff had committed serious misconduct and to remove him from his duties, without making a factual determination and without legal support, and by denying Plaintiff access to his duty computer, and office, to ensure Plaintiff would NOT be able to learn the real reason for the investigation. Allen intended Plaintiff to rely on the false statements, and Allen had directed Plaintiff that he could not discuss the investigation with other employees.

74.     Defendant Allen further acted with intent to misrepresent and deceive Plaintiff, by committing acts and omissions to conceal the false statements and to conceal the real reason for the investigation, including advising the agency's Privacy Act officers to deny Plaintiff's correction requests in May and October 2024, and/or taking action through Does to deny Plaintiff's correction request, and/or by remaining silent. Allen's intent is further established because he further misrepresented to the OMHA investigators, Judges Tim Stewart and Lauren Tran, and later Christine Le who replaced Judge Tran, the real reason for the investigation, and/or directed them to limit their notice of the allegation and the investigation into the matters contained only in the false notice allegation letter Allen issued to Plaintiff on June 8, 2022.

75.    Plaintiff received this additional false notice from Judge Stewart by letter dated June 9, 2022, as Allen had directed. Allen further acted to prevent witnesses from presenting evidence on Plaintiff's behalf who were interviewed during the investigation, which took place between June 8, 2022, through September 30, 2022, who were not advised of the real reason for the investigation. Allen further prevented Plaintiff's attorney during the administrative investigation, Peter Noone, an opportunity to prepare adequately on behalf of Plaintiff, by concealing the real reason for the investigation, and by denying his and Plaintiff's request for more specific information about the allegation and denying Plaintiff's request to elevate the investigation to the HHS OIG, which division was responsible for conducting any formal investigation according to agency instructions. By conducting the investigation himself, Allen was able to control it and preclude due process notification.

76.    Defendant Allen on or about June 2023 concealed the false statements further by acting to prevent disclosure required by court rules by committing acts or omissions to prevent an adequate initial disclosure statement to be filed during the age discrimination litigation, thus interfering with judicial process and settlement discussions and processes. Defendant Allen and defendants Does, further concealed the false statements during all settlement negotiations during the age discrimination case, including a formal mediation session before a United States Magistrate Judge, and tainted the settlement agreement and release by concealing material evidence which he should have disclosed relating to the real reason for the investigation. Allen had a duty to disclose to Plaintiff under federal and agency regulations, court disclosure rules, and inherently as he had a confidential

employment relationship and authority as head of the agency, to oversee the administrative investigation, and under the Due Process Clause, in the Fifth Amendment. Allen took further action to deny in the Secretary's Answer to the Complaint in the First Lawsuit, that managerial decisions had anything to do with the investigation, which was false.

77.    Defendant Allen and defendants Does, engaged in willful and deliberate conduct providing Plaintiff with false notice of the allegation used to support an administrative investigation. Allen and Does committed acts and omissions to misrepresent and conceal the false notice, and the real reason for the investigation, and violated Plaintiff's rights under the Privacy Act, by allowing the agency to maintain inaccurate closed investigation records. This included making adverse determinations against Plaintiff, by recommending denial of Plaintiff's request to correct the closed investigation records or taking other action or omission to that effect to agency privacy law officers. Allen continued to perpetuate and conceal the falsity of the allegation notice letters, by concealing the real reason for the investigation and not disclosing the false nature of the June 2022 letters, to agency Privacy Act officials, Park and Holzerland, who were reviewing Plaintiff's correction request.

78.    Contacting a federal agency for information is not misconduct under HHS Instruction 752 (disciplinary employment process), 45 C.F.R. Part 73 (HHS standards of conduct) or 29 C.F.R. Sec. 2635.101 (basic obligations of federal employees), and constitutes free and protected speech, and such acts were within Plaintiff's authority as a senior level official and management judge.  (Complaint Ex. 1). As head of the OMHA Allen had knowledge of agency regulations and obligations.

79.    Plaintiff had full authority under agency regulations and its enacting legislation and

organizational structure to act for the welfare of the Phoenix Field Office. (Complaint Ex. 1). Plaintiff had informed his direct supervisor of his actions, and his conduct was condoned and known to proper agency officials, and to Allen. Defendant Allen's actions were also a pretext to conceal his conduct committing discriminatory, retaliatory, and hostile acts and omissions against the Plaintiff due to age. Allen's conduct caused Plaintiff adverse impact and harm as pleaded herein to include but not limited, loss of earnings and other pecuniary losses including loss of additional retirement benefits, loss of professional reputation, physical harm, including aggravating Plaintiff's hypertensive medical condition, incurring out of pocket medical expenses, emotional stress, weight loss, and anxiety.

80.    The Agency's enacting organizational structure governs OMHA's organization, duties, and responsibilities, and expressly applies to Field offices and HQ personnel. The OMHA's organizational structure was adopted in the agency's enacting legislation and is published in the Federal Register and reported to the public and Congress, at Chapter AK to MMA, Part A, Ch. AA, Sec.  AA.10, Pub. L 108-173 (2003), United States, Health Human Services, "Statement of Organizational Structure." 70 Fed. Reg. 120 (June 23, 2005) and 76 Fed. Reg. 69 (April 11, 2011). It expressly provides field office management judges like Plaintiff was (ACALJs), have broad and discretionary management authority, are the head of each field office and have authority to lead, manage, guide, and direct all staff, and that ACALJs are superior in command structure to the hearing office director position (HODs). HODs are supposed to report to the ACALJs. It and all amendments have been published in the Federal Register. (Complaint Ex.1).

81.     The chief judge's position is expected and required to lead and direct management judges lawfully and ethically, and to abide by the enacting organizational structure. Defendant Allen violated the enacting organizational structure and his legal responsibilities as a federal employee and manager and the HHS standards of conduct to follow and obey and abide by the Constitution and all federal laws, rules, and ethical regulations, and violated criminal statutes by making false statements and sending those false statements through the mail. His conduct was purported to be acting in his official capacity but was not within the scope of lawful duty, because he engaged in deceptive and illegal conduct and made false statements and then concealed those statements.

82.     Defendant Does are believed to be attorneys and investigators, and/or other OMHA employees who knowingly committed wrongful acts and omissions and who assisted defendant Allen by recommending the adoption of and then later concealing the false statements and the real reason for the investigation. Wrongful acts include advising defendant Allen to deny Plaintiff's request for more specific notice of the allegation and to deny Plaintiff's request to elevate the investigation to the Office of Inspector General. Other acts included advising Privacy Act officers to deny Plaintiff's request for records correction and concealing material evidence and by acts and omissions preventing an initial disclosure statement with sufficient information about the false statements to NOT be disclosed in the First Lawsuit. Defendant Allen and defendants Does, further prevented Plaintiff from calling witnesses and mounting a defense to the real allegation, which could have been accomplished if the parking incident allegation had been properly noticed.

83.     Witnesses could have included certain GSA officials who seemed willing to provide

some parking facilities or take other action to protect the safety of judges at the Phoenix Field Office. Defendant Does, further committed overt acts of concealing the false statements from Privacy Act agency officials, and in furtherance of a conspiracy to retaliate against Plaintiff for attempting to report defendant Allen's conduct of terminating parking privileges for judges at the Phoenix Field Office, and to prevent Plaintiff from reporting Allen's questionable fiscal conduct. Other acts include that Does prepared a draft and final version of the false notice of allegation letters for defendant Allen, and assisted defendant Allen in carrying out his fraudulent acts through using the United States mail system, through a commercial carrier service.

**Count 1. Privacy Act Amendment Claim, to Amend and Correct Records; 5 U.S.C. Sec. 552 (g)(A),** *et al.*

84. Plaintiff incorporates by reference all previous paragraphs alleged herein.

85. On May 3, 2024, Plaintiff made a request to correct and amend the two June 2022, notice of allegation letters which relate to Plaintiff, which the agency did not promptly respond to. The defendant agency eventually denied the correction requests on August 20, 2024, and October 3, 2024, on the basis that the June 8, and 21, 2022 notice of allegation letters contained correct and accurate information.

86. On December 10, 2024, the agency disclosed the purported real reason for the investigation admitting it was Plaintiff's conduct to attempt to contact GSA for information as to whether he could pay for parking privileges at the Phoenix Field Office after defendant Allen terminated parking, and other "unnamed managerial acts." The June 8, 2022, broad and vague notice did not describe the "real" reason for the investigation. The

parking situation and other unnamed managerial acts did not appear in the notice letter provided to Plaintiff from Allen. Defendants denied the parking situation and managerial acts were relevant to the investigation, in its pleadings, in the First Lawsuit, therefore pleading managerial acts had no application to the investigation.  Managerial acts are not considered to be misconduct under agency instructions and regulations and are not sufficient reasons to conduct a formal employment disciplinary investigation, nor to place an employee on investigative leave. The two June 2022 notice letters are inaccurate, unfair, misleading and incomplete.

87.    Plaintiff requests the Court order expungement of his name from the closed investigation records, especially the June 2022, false notice letters and/or order the following formal correction by amendment to the June 8, 2022, June 9, 2022,  and the June 21, 2022, notice of allegation letters, or both, to wit:

**The agency (HHS) made a judicial admission in a federal lawsuit filed against it by the Plaintiff (Judge Cianci), on or about December 10, 2024 (CV-24-00417-TUC-RM, Doc. 17), that purported to state a different reason for placing Plaintiff under investigation than was previously given in the June 8, 2022, letter defendant Allen mailed to Plaintiff. The cited new reason related to managerial reasons and not employee misconduct and cited that Plaintiff's conduct of contacting another federal agency, the GSA, for information relating to available options for continuing use of parking spaces at the Phoenix Field Office, for his judges, after Judge Allen terminated parking privileges for what Allen described as budget reasons. In a previous pleading defendant agency inconsistently denied in its Answer that managerial acts were the reason for placing Plaintiff under investigation. (age discrimination lawsuit, CV-22-01568-PHX-SMB, Doc. 27). The June 8, 2022, letter contains inaccurate, unfair, and incomplete information, and erroneously conveyed an inference that misconduct was involved. The previous settlement agreement in Plaintiff's earlier age discrimination lawsuit contained a provision agreed to by both parties that stated the investigation made no findings adverse to Judge Cianci from the investigation.**

88.    Allen verbally admitted to agency EEO specialist E. Jones in about February 2025, the parking situation was related to the investigation. The June 8, 2022, letter signed by Allen and mailed to Plaintiff across State lines upon Allen's direction did not provide notice of the parking situation. At no other time did Allen inform Plaintiff that the parking situation was the real purported reason for the investigation. Plaintiff requests the expungement of his name from the closed investigation records including from the June 2022 notice letters or other corrective relief deemed just by the Court.

89.    The requested amendment is accurate and verifiable and legally sufficient in accordance with Federal case law. It does not seek to replace the defendant agency's judgment but corrects the inaccurate, unfair, and incomplete notice letter defendant Allen provided Plaintiff.

**Count 2. Privacy Act Accuracy Claim. Failure to Maintain Accurate, Fair, and Complete Records and Claim for Damages, and for Other Violations under the Privacy Act; 5 U.S.C. Sec. 552a *et al.*, (552a((g)(1)(C) &(D)).**

90.    Plaintiff incorporates by reference all previous paragraphs alleged herein.

91.    On May 3, 2024, Plaintiff made a request to correct and amend the June 2022, notice of allegation letters which relate to Plaintiff, which the agency did not promptly respond to. The defendant agency eventually denied the correction request on August 20, 2024, and October 3, 2024, on the basis that the June 8, and 21, 2022 notice letters contained correct and accurate information. On December 10, 2024, the agency disclosed the purported real reason for the investigation was Plaintiff's conduct to attempt to contact GSA for information as to whether he could pay for parking privileges at the Phoenix Field Office after defendant Allen terminated parking, and other managerial decisions. Defendant Allen

used false pretense to justify the investigation. The two June 2022 notice letters are inaccurate, not fair, and not complete. The agency's conduct, through Allen, was willful and deliberate. The agency knew inaccurate and incomplete records were being maintained since it issued the June 8, 2022, notice letter to Plaintiff. The agency admitted the real reason for the investigation in pleadings on December 10, 2024. The agency has not corrected those records to date.

92.     Defendant agency has committed additional Privacy Act violations which are actionable under 5 U.S.C. Sec. 552a (g)(1)(D) for violating the agency's implementing regulations pursuant to 45 C.F.R. Part 5b, by allowing the agency to possess and/or maintain inaccurate records about Plaintiff without providing notice to Plaintiff, and by violating National Archives Records Administration (NARA) record retention rules, including General Schedule Rules (GSR) 2.2 and/or 2.3, and threatening the dissemination and the actual dissemination of confidential, inaccurate and incomplete records, including confidential settlement discussions, and records which are beyond destruction dates under NARA schedules and other federal law.

93.     The acts caused harm to Plaintiff by decreasing his employment opportunities causing pecuniary loss and impacting on his mental and physical health, including aggravating his hypertensive medical condition, to which Plaintiff has incurred actual medical expenses. Plaintiff has been questioned by a prospective client relating to concerns about the investigation and may not be eligible to apply for certain federal positions, and less competitive for others. Plaintiff has a need to have the agency formally correct the closed investigation records to mitigate against future economic losses. Plaintiff faces loss

of prospective legal clients. Federal courts have determined loss of prospective clients and

other potential economic losses constitute sufficient pecuniary loss for the purposes of a

Privacy Act accuracy claim. *Makowski v. United States*, 27 F. Supp. 3d 901 (N.D. Ill.

2014), and other federal case law.

94.    Defendant agency has willfully and deliberately maintained inaccurate, unfair, and

incomplete information in Plaintiff's closed investigation records by failing to correct the

records to reflect that defendant Allen made inaccurate and/or incomplete statements to

justify the investigation, and by concealing the real reason(s) for the investigation.

Defendant agency knowingly and willfully, maintains false and inaccurate information in

Plaintiff's closed investigation records which has caused an adverse determination and

impact upon Plaintiff, including but not limited to denying Plaintiff's request to correct

his records, initially and on appeal, including the June 8, 2022, false notice of allegation

letter signed by defendant Allen, and which it knows is false, misleading, incomplete, and

inaccurate. The agency's conduct, by Allen and Does, has been willful and deliberate.

Denying the request for correction constitutes an adverse determination. The Plaintiff has

suffered pecuniary harm.

95.    Defendant agency's conduct of maintaining the inaccurate records continues to

cause Plaintiff harm and damages, including his mental health and aggravates his

hypertensive medical treatment causing harm and monetary loss to Plaintiff, and out of

pocket medical expenses. Plaintiff has been denied loss of economic opportunity and a

decreased competitive position and opportunity in applying for other federal positions

and has a potential loss of clients because of the inaccuracy records maintained by the

agency which falsely infers and states by citing violations of policy and rules. The Plaintiff was investigated for misconduct, when he was improperly investigated for managerial decisions in violation of agency regulations and instructions, including HHS Instruction 752 and 45 C.F.R. Part 73.

96.     The inaccurate, unfair, and incomplete records also subject the Plaintiff to additional scrutiny of future security clearances and suitability determinations pursuant to 5 C.F.R. Part 731, *et al.,* and lessens his employment opportunities, by negatively impacting his competitiveness for federal and other employment. The investigation will be reviewed and considered in any future suitability determination. The denial of correcting the records constitutes an adverse determination under federal law. The records maintained by the agency are not accurate, are unfair, and are incomplete. The Plaintiff seeks all damages allowed by law. Defendant agency in the settlement agreement agreed that no adverse findings were made against Plaintiff in the investigation. That stipulation is binding upon defendant Allen and the agency.

**COUNT 3. Age Discrimination under the ADEA, Plaintiff's Employment Claim and Post-Employment Retaliation.**

97.     Plaintiff incorporates by reference all previous paragraphs alleged herein.

98.     Defendant Allen has exhibited a pattern of discrimination against aged employees. Judge P.G. has just returned to her duties after being constructively discharged by Allen. The agency's decision found Allen committed discrimination against her for denying her medical accommodation. Judge P.G. is also an aged employee (67 years old). The agency found Allen's actions to be against agency policy and required a notice of posting of

discrimination. Evidence of discrimination against other employees is relevant and probative in discrimination cases. *Jamal v. Wilshire Management Leasing Corp.*, 320 F. Supp. 1060 (D.C. Ore. 2004).

99.     Plaintiff received disparate treatment and was subjected to a hostile work environment. Plaintiff is in the protected age class, and he was satisfactorily performing his duties as an ALJ and manager, was subjected to adverse employment action by falsely being placed under investigation and placed upon investigative leave, resulting in his constructive discharge. He was replaced by a substantially younger individual, to include assigning Plaintiff's duties to Carla McGregor, the hearing office director, and another younger management judge from the Atlanta Field Office, and eventually replacing Plaintiff full time by assigning his duties to Judge John Bergen. All are substantially younger than Plaintiff by some 15 years or more. Plaintiff was also subjected to substantial and pervasive hostile acts which led to constructive discharge, which included acts of direct discrimination and retaliation, where a senior HQ leader and Human Resources Director, cursed and yelled at Plaintiff over a 35 minute period in a car ride knowing Plaintiff could not exit, and made disparaging comments about his age; where a Jane Doe management official tried to undermine Plaintiff's authority and  made disparaging comments about Plaintiff's age to a supervisory attorney who reported the conversation to Plaintiff; and where another agency management official left a disparaging note on his desk with severe age related disparaging notations. The Plaintiff further had his case records concealed by certain Does, and over 800 case dispositions were wrongly credited to another filed office to intentionally lower the Phoenix Field Office disposition statistics to which Plaintiff was

responsible. The Human Resources Director who cursed at Plaintiff also had an instrumental role in keeping Plaintiff from being interviewed for the position of chief judge. Plaintiff was the only OMHA employee not allowed to interview and was some 10-24 years older than other applicants, and was told the agency did not have the time to interview him. Discrete acts include the acts by Allen and Does relating to the investigation and being placed on investigative leave and providing Plaintiff with false notice of discrimination, which was contained in the June 8, 2022, notice letter and being deprived of all his due process rights associated with the investigation. All initial acts were also part of a retaliation pattern by ADIs Allen and Does because the Plaintiff participated in protected activity including, he had complained to agency DEI officials the agency discriminated against Hispanic descent applicants relating to ALJ hiring at the Phoenix Field Office. Post-employment retaliation has been motivated by Plaintiff filing his two previous EEO-related lawsuits and his EEO administrative claims with the agency.

100.    The Supreme Court has held retaliation and post-employment retaliation discrimination is actionable under the ADEA. *Gomez-Perez v. Potter,* 553 U.S. 474 (2008) (applying retaliation claims to federal employees); *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) (Title VII, holding the term employee includes former employees). Acts of age continued discrimination and post-employment retaliation include continued threats and harassment including the agency denying Plaintiff's records correction request by the agency on August 20, 2024, and October 3, 2024, knowing the records contained incomplete and false information, and admitting so two months later, but taking no corrective action. This act of retaliation has caused Plaintiff harm including loss of

employment opportunities, by the agency maintaining inaccurate and false information in closed investigation records in retaliation for Plaintiff filing his original EEO complaint with the agency, and his recent EEO complaint with the agency on January 8, 2025, when he discovered fraudulent concealment conduct, and his previous age discrimination court case, and complaints relating to OMHA discriminatory hiring practices for ALJs. The elements of a retaliation claim must plead that Plaintiff engaged in protected speech, an adverse employment decision, and causation. The terms adverse action and personnel employment action are defined broadly. Federal employees only need to establish that age discrimination was a motivating factor in any employment related decision, not "but for" causation. *Babb v. Wilkie*, 140 S. Ct. 1168 (2020). Threats and harassment are defined as adverse action under federal case law.

101.    The agency has committed post-employment threats and harassment, including threats that the agency could disseminate false, incomplete, and inaccurate information, including a draft settlement agreement relating to the administration investigation which contains confidential settlement communications, by designating such records as public and releasable under the Freedom of Information Act. The agency also knowingly maintains employment information relating to Plaintiff which was required to be destroyed under NARA general schedule records rules. Denial of correction of his closed investigation records maintained by the agency constitutes post-employment retaliation and an adverse employment action, just like post-employment compensation matters denying unemployment benefits, disability benefits, and terminating severance packages, post-employment. *Ward v. Wal-Mart Stores, Inc.*, 140 F. Supp. 2d 1220 (D.N.M. 2004;

*Stezzi v. Citizens Bank of Pa.*, No. 10-4333, 2012 WL 4717900 (E.D. Pa. 2004). Post employment threats and harassment have also been deemed to be post-employment adverse employment actions. *Reed v. Shepard*, 939 F.2d 484 (7th Cir. 1991).

102.    Defendants Allen and Does (ADIs) have retaliated against Plaintiff by non-compliance with the settlement agreement, including not maintaining the closed investigation records in one secured location with the agency's Office of General Counsel and by reneging on terms in the agreement, relating to its agreed term the agency made no findings adverse to Plaintiff. Allen and/or Does, as alleged discriminating individuals, appointed Ms. Karen Ames, a conflicted employee who was named an ADI in the First Lawsuit, to be the deciding official for the Secretary relating to Plaintiff's recent and required January 8, 2025, EEO informal complaint process, and by providing false and incomplete information during interviews with agency EEO specialist E. Jones. Allen's conduct was motivated wholly or in substantial part, because of age discrimination. Retaliation continued because Plaintiff participated in an EEO and protected activity by filing his age discrimination claim with the agency and in court. Prior to the execution of the settlement release, Allen committed additional discriminatory acts and retaliation because of age by concealing material evidence including the real purported reason for the investigation and by not taking action to correct Plaintiff's records and continued to discriminate against Plaintiff because of age.

103.    The adverse employment actions committed in 2022 include placing Plaintiff under a bad faith investigation and on investigative leave, and by violating Plaintiff's rights under the Older Workers Benefit Protection Act in June 2023. The OWBPA requires a knowing

and informed waiver before an age discrimination case may be settled. Defendant Secretary and ADIs Allen and Does, violated those safeguards by concealing from Plaintiff the real reason for the investigation. Violating the OWBPA voids the settlement release. 29 U.S.C. Sec. 626(f). Allen's continuing conduct of concealing the purported real reason for the investigation constitutes post-employment retaliation and establishes Allen deliberately allowed Plaintiff's records to be maintained with false accusations contained therein.

104.    The release is null and void because of Allen's fraudulent, deceptive and misleading conduct. Plaintiff's prior age discrimination claims, and post-employment retaliation claims are actionable. Under the no tender rule, Plaintiff is not required to return the benefit of the bargain received but is subject only to a monetary offset for the defendant Secretary after the final award, if higher. Any statute of limitations for filing new discriminatory acts is likewise tolled for the same reasons. The discrimination relates back to Plaintiff's employment with the agency. Defendants Allen's and Does' acts of deception, fraud and misrepresentation concealed material evidence from the Plaintiff, including concealing the real reason for the investigation and detrimentally impacted the settlement agreement and the judicial settlement process. Disclosure of the purported real reason for the investigation would have significantly strengthened Plaintiff's litigation position, and his negotiation posture. *X-Cel Sales LLC v. A.A. Smith Corporation,* supra. Allen had a duty to disclose all acts of age discrimination and material evidence prior to executing the settlement agreement. Allen had a duty to disclose the purported real reason for the investigation under court rules and federal regulations as pleaded above. Allen had a duty to make sure the government's pleading did not contain false information.

51

105.    The Plaintiff was 68 years old when he was discriminated against because of age by being placed under investigation, and when ADI and defendant Allen signed and sent him false statements in the allegation notice letters, 69 years old when he retired, and 71 years old when he learned of the newly disclosed hostile and discriminatory acts and course of discriminatory conduct and retaliation, on December 10, 2024. Plaintiff is in the protected class. The Plaintiff complied with federal regulatory tolling requirements and exhausted administrative remedies by filing his new age discrimination complaint with the HHS EEO office on January 8, 2025, and within 45 days of learning of the newly disclosed discriminatory acts.

106.    Plaintiff officially learned of the concealed material evidence on or about December 10, 2024, and provided 30 days' notice to the EEOC as set forth within 29 C.F.R. Sec. 1614.201 on or about February 14, 2025, and has completed all procedural (non-jurisdictional) requirements to file his age discrimination claim directly in Federal Court. Previously, relating to the First Lawsuit, age discrimination claim, Plaintiff had likewise and timely filed his EEO claim with the HHS EEO office within 45 days of being last extended and placed on investigative leave on or about September 29, 2022. (First Lawsuit).

107.    ADI Allen caused Plaintiff harm and adverse actions and impact by his intended acts of age discrimination and retaliation and failure to disclose the purported real reason for the investigation. The discriminatory acts and omissions of defendants Allen and Does, caused or significantly contributed towards the adverse action of and loss earnings by having Plaintiff's correction request denied and Plaintiff has suffered loss of economic

opportunity. Adverse actions include but are not limited to placing Plaintiff under investigation and on investigative leave, stalling his access for records requests and denying Plaintiff's correction of records request, making post-employment threats of wrongfully disseminating information under the FOIA, denying Plaintiff an independent and impartial review of his administrative EEO claims, and constructive discharge. ADIs Allen and Does, interfered in the agency's EEO informal complaint process denying Plaintiff the opportunity to informally resolve his January 8, 2025, EEO claim by appointing or having a conflicted person, Karen Ames, to act as the deciding official, for the Secretary, and which constitutes an adverse action and impact which harmed Plaintiff, as post-employment harassment and threats continue.

108.    Plaintiff suffered discriminatory and hostile acts and disparate treatment because of age. Wrongfully placing Plaintiff under investigation and upon investigative leave contributed to an already existing hostile work environment, which was substantial and pervasive, leaving the Plaintiff with no other option than to retire. The false statements by ADI Allen contained material information by misidentifying the most basic information necessary to put Plaintiff on notice of why he was being investigated. ADI Allen laid out a perfect disguise and pretext by making a false allegation against Plaintiff, establishing the investigation was a pretext to discriminate against Plaintiff because of age. The false allegation inferred serious employment misconduct, while the purported real allegation related to managerial duties, in which Plaintiff acted, and had the authority to conduct and make independent and discretionary decisions, and which should not have been subject to a formal employment investigation according to agency regulations and instructions. The

parking situation allegation would not have supported placing Plaintiff on investigative leave pursuant to 5 U.S.C. Sec. 6329(b). Allen's conduct of not following the statutory requirements relating to the investigative leave decision constitutes further discrimination and retaliation and adverse action.

109.    Plaintiff had been vested with broad authority and managerial discretion granted by the enacting organizational structure to manage the Phoenix Field Office and had every right to contact GSA for information about the parking situation. The Plaintiff could and would have been able to have successfully defended himself against the real allegation relating to the parking situation, had Allen noticed it. Defendant Allen's conduct of providing false notice of the allegation to support a discriminatory investigation of Plaintiff and then concealing his conduct and the nature of the false allegation, constitutes a concealed discriminatory and retaliatory hostile act against Plaintiff which relates back to his on duty discrimination suffering, and an extension of it, and which is actionable under the ADEA, and which was concealed during the First Lawsuit by the ADIs Allen and Does. Plaintiff was deprived by Allen and Does of the opportunity to obtain additional remedies in the settlement agreement, including reinstatement and substantially increased money damages.

110.    Defendants and ADIs, Allen and certain potential defendants Does, have further admitted their discriminatory conduct during interviews with the agency's EEO counselor, E. Jones, after Plaintiff filed his EEO administrative claim with the agency on January 8, 2025. ADI Allen admitted that at no time did he inform Plaintiff that the real reason for the investigation was the parking situation, and other unnamed managerial acts. Making

additional false statements and acts to conceal his discriminatory conduct and to create yet another false pretext Allen and Does infer they would have eventually informed Plaintiff of the real reason for the investigation had Plaintiff not retired on September 30, 2022, before his scheduled investigative interview. Their conduct proves otherwise. They all failed to inform Ms. Jones Allen had already denied Plaintiff's request for more specific information and that he had instructed appointed investigators Stewart and Tran to inform Plaintiff that the investigation was limited in scope to the allegation contained in the June 8, 2022.

111.    Knowing his attempted mitigating statements to the EEO counselor were false at the time made, ADIs Allen continued to attempt to conceal his discriminatory actions, and attempted to impede the agency's own administrative EEO process. Allen did not inform witnesses who were interviewed during the investigation with the purported real reason for the investigation, and Allen concealed the real reason for the investigation from Plaintiff's attorney, Peter Noone. Witnesses were questioned about numerous subjects unrelated to either the allegation contained in the June 8, 2022, notice letter or the parking situation, including a matter related to another Phoenix office judge's military leave, which Allen knew Plaintiff had kept his supervisor and the agency fully informed and was not a matter for investigation. Actions sometimes speak louder than words, especially false words, and defendants Allen continued to conceal the false nature of the allegation through the records correction process (May-October 2024) and the initial disclosure statement process, during the First Lawsuit (June 2023).

112.    Defendant Allen had a higher duty as an HHS supervisor and is prohibited from

retaliating against employees for engaging in protected speech and whistle blower activity. 5 C.F.R. Sec. 752; 45 C.F.R. Part 73. The retaliation is because Plaintiff exercised his rights to engage in protected activity, including his right to participate in the EEO process, by filing his age discrimination lawsuit (CV-22-01568-PHX-SMB), by filing his January 8, 2025, EEOC claim with the agency, and to legally seeking access to EEO related records, maintained by the agency under the Privacy Act.

**Count 4.** *Bivens* **Action Constitutional Violations, Violation of Due Process of Law based upon Age Discrimination, and Equal Protection Component, and Retaliation.**

113.    Plaintiff incorporates by reference all previous paragraphs alleged herein.

114.    Defendant Allen and Does, acting under color of law and in a manner to be purporting to fulfill their official duties, intentionally and knowingly violated Plaintiff's constitutionally protected rights including his right to due process of law. The employment and post-employment age discriminatory and retaliatory acts pleaded above are alternatively or jointly, actionable under *Bivens*. Plaintiff was not a federal employee after September 30, 2022, and had no personnel relationship with defendant Allen or defendant Does for time periods two and three herein, during which time defendants Allen and Does, engaged in numerous deceptive acts to conceal their conduct and the purported real reason for the investigation. Defendant Allen's action of making a false statement to conduct an employment investigation, and concealing evidence violates federal regulations and even federal criminal statutes. Moreover, Allen side-stepped regulations since he initiated the investigation without evidence of misconduct. 5 C.F.R. Sec. 2635, *et al.* (federal employee obligations), and 45 C.F.R. Part 73, *et al*. (agency standards of conduct), HHS Instructions

752), and 18 U.S.C. Sec. 1001; 18 U.S.C. Sec. 1341 (false statements, concealment, and false and fraudulent schemes through the mail).

115.    This is a true *Bivens* action and very similar in fact to *Davis v. Passman*, supra. Applying *Bivens* relief here is not an extension to a new area or other protected conduct. The constitutional violations committed here are based on the Due Process clause of the Fifth Amendment, and just like *Davis v. Passman*, with an underlying equal protection component, based in discrimination, and an additional aggravating fact which relates to defendant's conduct violating Plaintiff's free speech right under the First Amendment, by impeding his right to contact another federal agency for information  for the welfare of his employees, and to report corrupt conduct under federal regulations. In *Davis,* the underlying equal protection component was based upon sex discrimination within a federal employment context, a Congressman and a staffer, but at least Congressman Passman in that case, admitted in writing he was firing and replacing Ms. Davis because of her gender, and did not attempt to conceal his conduct. For what it is worth at least, he did not engage in deceptive conduct as defendant Allen has done.

116.    Defendant Allen orchestrated an elaborate deceptive scheme because of age, knowing Plaintiff had a severe hypertensive medical condition, to either force or encourage Plaintiff to retire early from the agency by filing a false allegation against him, and which he and defendant Does have concealed for over two years. The purported real allegation, the parking situation, was known by Allen that it was not misconduct but related to Plaintiff's broad and discretionary management duties provided to him by the agency's legally mandated organizational structure. Allen further participated in unlawful retaliatory

conduct because Plaintiff participated in protected whistleblower activity as Allen was aware Plaintiff was going to report Allen's fiscal conduct terminating judges' parking privileges to an outside agency. Allen violated 5 C.F.R. Sec. 752.101 *et al.,* (supervisor retaliation prohibited).

117.    The two notice letters signed by defendant Allen used to support the investigation were false, misleading, inaccurate, and incomplete. The false notice was not disclosed during the age discrimination case and was ignored and not disclosed when Plaintiff requested correction of his records in May and October 2024. Allen refused to provide Plaintiff with complete notice of the allegation to support the investigation. Allen is a licensed attorney and ALJ and is aware of the critical importance of due process notice. The purported real reasons were concealed from Plaintiff during the entire course of the 4-month long investigation, the prior age discrimination lawsuit, and the records correction process. Allen deprived Plaintiff of due process of law and impeded his attorney's ability to represent Plaintiff by failing to disclose the true nature of the allegation to attorney Peter Noone.[1]

---

[1] Plaintiff upon belief and information, alleges approximately, less than a dozen witnesses of some 100 employees, from the Phoenix Field Office, were interviewed during the investigation and each for only a very short duration, and they were not advised of the real reason for the investigation. The investigation was a punitive fishing expedition and conducted in bad faith. Plaintiff believes not even the appointed investigators, Stewart and Tran and later Judge Le who replaced Tran, knew of the real reason for the investigation. The four-month duration was only because Plaintiff's hypertensive medical condition was largely uncontrolled because of the stress and prevented his participation earlier. Plaintiff was scheduled last and was to be interviewed on October 7, 2022, but retired on September 30, 2022, after he was informed defendant Allen would not provide specific notice of the allegation and would not elevate the investigation to the Office of Inspector General, which Plaintiff had requested. Plaintiff is one of at least five known management judges who were investigated in this or similar fashion by Ms. Ames or Allen.

118.    The required initial disclosure statement, in the prior age discrimination case, was not filed by defendant Secretary and/or did not contain information relating to the real reason for the investigation. Defendants Allen and Does have manipulated the prior Court and settlement proceedings by not disclosing that the investigation was initiated upon a false pretense and by denying at first that managerial acts were not involved in the investigation. Allen and Does had a duty to disclose their conduct to Plaintiff, and violated the Older Workers Benefit Protection Act by depriving Plaintiff of material information which impeded and prevented informed consent. The defendants' conduct deliberately providing inaccurate information it their pleadings establishes an intent to further manipulate the judicial process to conceal their continued retaliatory acts. (CV-22-01568-PHX-SMB, Doc. 27).

119.    The false notice of the allegation was designed to prevent Plaintiff from mounting a defense and inferred Plaintiff had committed serious misconduct when defendants knew that was not correct. Placing Plaintiff on investigative leave and removing him from duty was intended to give credence to the false notice allegation to falsely infer Plaintiff had committed serious misconduct. Plaintiff seeks all damages and relief allowed by law against defendant Allen and defendants Does in their individual capacity for violating his due process of law civil rights. Allen and defendants Jane and John Does, conspired to violate Plaintiff's constitutional rights. Due process of law and basic rights under the Constitution requires any federal administrative investigation to be conducted in a fair and impartial manner. Defendant Allen initiated an improper bad faith investigation based upon a false allegation, which defendant Allen knew was vague, overly broad, false and material,

and which Plaintiff could not defend against, and which Plaintiff relied upon, and which was intended by defendant Allen to be coercive and encourage Plaintiff to retire. Allen concealed the purported real reason for the investigation. Allen under color of law and purporting to exercise his lawful duties instead provided false notice of the allegation and concealed his conduct, and his conduct violates federal regulations and is potentially criminal. He is not eligible nor entitled to qualified immunity. He is liable for punitive damages. Allen continued to deprive Plaintiff of die process in his post-employment conduct as alleged previously herein.

120.    Defendant Allen controlled the investigation and made key decisions which denied Plaintiff due process of law, informed consent, and misled Plaintiff. Federal investigations motivated for political reasons, harassment, bad baith, or intimidation are deemed invalid. *Pennington v. Donovan,* 574 F. Supp. 708 (S.D. Tex. 1983) cited and approved in numerous Circuits. The Civil Service Reform Act, Pub. L. 95-454, 92 Stat. 1111 (CSRA 1978) codified at various sections within Title 5, does not bar nor preempt this claim, and is not an exclusive remedy in this case, as this case involves potentially serious criminal conduct, serious constitutional rights violations and fraudulent conduct by defendant Allen for making a false statements serious enough to impose criminal liability, and basing an investigation under a false pretense, and thereafter committing numerous acts and omissions by concealing his deceptive conduct and his false statements. Filing a false statement in an official proceeding and concealing the conduct may be considered criminal acts. 18 U.S.C. Sec. 1001.

121.    The release executed in the previous age discrimination lawsuit is not enforceable

because of the false statements and committed fraud, deception, overreaching and misrepresentation, and because Allen, Does, and the agency, violated the OWBPA waiver requirements. Allen concealed his deceptive conduct for over two years. The crime-fraud exception will apply in this case to certain attorney-client communications to the extent the communications relate to criminal conduct by any attorney who knowingly recommended or assisted Allen in drafting the false notice letters. The CSRA was never intended to be an exclusive remedy under circumstances such as this, where deception and corruption by certain agency officials permeated the entire investigative process. *Spagnola v. Mathis*, 859 F2d.223 (D.C. Cir. 1988) (en banc) (while applying the CSRA to the facts of the case but holding federal employees not precluded from filing civil rights violations for serious constitutional violations). *Collins v. Bender,* 195 F.3d 1076 (9th Cir. 1999) and *Brock v. United States,* 64 F. 3d 1421 (9th Cir.1995) (criminal conduct falls outside the scope of the CSRA).

122.    Moreover, many wrongful acts committed by Allen, including fraudulent concealment and age discrimination retaliation, took place in period 2 and 3, after Plaintiff left federal service.  Making false allegations to prevent a federal employee from seeking information from a federal agency to promote the safety of his employees, and/or reporting fraud, waste, abuse, and corruption, further violates Freedom of Speech and constitutes blatant discrimination and retaliation and constitutional violations.

123.    Plaintiff's claim here is a true *Bivens* case just like in *Davis v. Passman,* supra., and is akin to the line of federal cases which hold that warrantless wiretaps and search warrants and sexual assaults are well outside of normal employment matters covered within the

61

CSRA. Allen's conduct violates 18 U.S.C. Sec. 1001 and Sec. 1341. The notice letters contained false, misleading and incomplete statements. Allen sent false letters to Plaintiff using the United States mail.

124.    The Plaintiff would not have known of the deception within a CSRA context. Allen controlled the investigative process and all the cards and with the help of Does, Allen provided false notice to Plaintiff and blatantly violated Plaintiff's procedural and substantive due process rights and discriminated against Plaintiff because of age. Defendant Allen wanted to reduce the ALJ Corps within his agency and did not want a 68-year-old office chief judge. This included placing Plaintiff on investigative leave without a factual finding, without cause, and under a false pretense, to bar Plaintiff from his office and duties and to prevent him from finding out about the false nature of the investigation.

125.    Just like in *Davis v, Passman,* supra*,* Plaintiff was subjected to discrimination (age) and his due process rights were violated, and there exists an equal protection component to the suffering consequences, as the agency treated an aged employee with hypertension differently. Plaintiff was previously denied an interview for the chief judge position, although qualified for the position, was placed under investigation in violation of agency instructions and regulations for acts not construed under agency policy to be misconduct and was placed on investigative leave in violation of the standards set forth in 5 U.S.C. Sec. 6329(b), and without making the required factual finding. The record in the previous age discrimination case discusses two incidents of direct evidence of age discrimination by agency personnel, and potential Does defendants, who made age related disparaging remarks against Plaintiff. The discrimination is further established by Allen's recent acts

of discrimination in January 2025, with the agency finding Allen constructively discharged another judge from the Phoenix Office and discriminated against her because of her disability. That judge was 67 years old when Allen discriminated against her. Allen has exhibited a pattern of discrimination, and it is his conduct which is at issue.

126.    The purported real reason relating to the parking situation, now given by the defendant agency for the investigation, establishes Plaintiff did nothing more than fulfill his duty to act for the welfare of his judges to determine if he could legally acquire a few parking spaces within the secured area of the Phoenix Federal Building, after Allen terminated the parking privileges under questionable fiscal circumstances. It is so benign an act that on its face it establishes it is a pretext to discriminate against Plaintiff. Age discrimination figures prominently here just like sex discrimination figured prominently in *Davis v. Passman*, supra. The very recent act by defendant Allen and Does of allowing a clearly conflicted employee, Ms. Ames, who had initiated the discriminatory investigation against Plaintiff, to determine for the Secretary the agency would not resolve Plaintiff's new age discrimination complaint informally within the federal EEO process, further establishes the CSRA provides no remedy for Plaintiff. Allen and Jane and John Does have acted outside their duty and have impeded the normal agency EEO process.

127.    The Plaintiff had full agency authority to attempt to pay for his judges' parking privileges after defendant Allen terminated those privileges. Defendant Allen and Does, continued to discriminate against Plaintiff by concealing material evidence and manipulating the judicial settlement process, and further concealed their unlawful conduct by committing further false and fraudulent acts making sure Plaintiff's correction of

records request was denied. Only this Court, through a *Bivens* claim, can address the type of discrimination and constitutional violations suffered by Plaintiff.

128.    In addition to violating 18 U.S.C. Sec. 1001, which prohibits federal employees from making false statements and separately concealing such conduct, defendant Allen abused the agency's legal and investigatory processes by using a pretext that Plaintiff committed misconduct and that he was a threat to persons or governmental interests, with no evidence and making no findings.

129.    Plaintiff is entitled to all damages allowed by law, including punitive damages for the outrageous and unlawful conduct of defendant Allen, and defendants Does, and there is a need to deter such unlawful conduct in the future, especially since Allen has been found by the agency to continue to discriminate against another employee. Alternatively, all damages related to post-employment age discrimination acts committed by Allen, and Does which are not covered by the ADEA are actionable under *Bivens* and damages may be awarded against Allen and Does, including for their post-employment discriminatory conduct, which include a right to trial by jury and punitive damages.

**Count 5. False Claims Act, Retaliation and Whistleblower Relief and Protection.**

130.    Plaintiff incorporates by reference all previous paragraphs alleged herein.

131.    An alternative pleading to the purported "real" reason for the investigation offered by the agency, being the parking situation, Plaintiff alleges that retaliation under the False Claims Act was the motivating reason to place Plaintiff under investigation and upon investigative leave. Pursuant to 31 U.S.C. Sec. 3729, Sec. 3730(h)  *et al*., the False Claims Act (Lincoln Law), there exists and existed at the time sufficient evidence and facts to

allow a reasonable person to believe that defendant Allen, from on or about November 8, 2020 through the present, participated in improper fiscal conduct, and joined certain Jane and John Does in an on-going payment or omission of payment scheme and conspiracy, and knowingly granted approval for and/or made certain false and material statements in conjunction therewith, and conspired with Jane and John Does, to make certain false and material statements, for the purpose of terminating Judges' paid parking privileges for unlawful and/or punitive reasons, in an attempt to reduce the OMHA judges' ranks, and concealed an employee preference and expenditure for funds, and or loss of value and cost reimbursement relating to Ames' office space at 333 Cassell Drive, Baltimore, Maryland.

132.    Sufficient evidence and facts existed that Allen took certain action approving and/or acquiring the use of government leased property at 333 Cassell Drive, Baltimore, Maryland ("the second office"), to obtain unneeded and unlawful second office space for the convenience of one employee (Karen Ames) so she would be able to work close to her home and not have to report to her assigned office in Arlington, Virginia, which conduct is in violation of agency regulations, and constitutes an unlawful employment preference. Allen's conduct resulted in a loss of value and use of that office space to the government for mission essential needs, and wrongful loss of the use and value of that office space, causing pecuniary harm and loss to the government.

133.    That defendant Allen and Does, did also allow other employment preferences including allowing certain employees to work at remote locations because of convenience and not because of reasonable medical accommodation or mission needs, and wrongfully paid temporary duty and travel expenses (TDY) to those employees, essentially providing

them with their own personal government expense accounts to support their personal preference to live and work in a location away from their actual duty location. Allen had knowledge Plaintiff was aware of those practices. This included employees M.K. and A.M., previously housed in the Denver, Colorado area, and investigator Daniel Kahane from the Tampa, Florida area.

134.   That defendant Allen made certain claims to terminate paid parking privileges at the Phoenix Field Office and other offices, by interfering with the GSA office lease and approved budget appropriations and by falsely claiming the funds did not exist, or were needed for other unnamed and false purposes, and for the purpose of encouraging aged judges and employees to retire, and who did not provide an accounting of the monies to management judges, who are the focal point of leadership for the OMHA under the enacting organizational structure, and which decision negatively impacted the field offices, including employee morale, with one judge retiring, Judge W.S. Allen informed management judges of his decision to terminate parking privileges at field office but provided no justification where the saved monies were to be used.

135.   That other federal employees are not afforded location preferences and second offices, and separate travel and per diem expense accounts to accommodate personal convenience, and the employment preferences incurred exorbitant and unlawful expenses to the government in the form of cost reimbursement or loss of cost reimbursement, double expenses to the government. loss of use and value, and/or to OMHA or other components of the HHS, including NIH, and/or which took money from other proper OMHA expenditures and mission related functions and activities. That in the recent Privacy Act

litigation defendants Allen and Does, concealed their wrongful activities, by taking false and deceptive action to deny the existence of records relating to the second office preference, including denying the existence of any property records in a formal response to Plaintiff on January 17, 2025, relating to Plaintiff's request to access those second office space records under the FOIA.

136.    The agency FOIA officer expressly stated she had checked with OMHA officials who said there were no records relating to the 333 Cassell Drive, Baltimore office lease. That evidence to the contrary exists, including an affidavit signed by OMHA employee Karen Ames, that she had received access to and used the second office since 2015, and evidence contained on the NIH webpage, that the NIH maintains space and lease records in its property records depository. (CV24-00417-TUC-RM, Doc. 34). Additionally, senior OMHA leader and former OMHA Budget Director Eileen McDaniel, admitted at a senior leadership meeting in about May 2022, Ms. Ames does occupy that second office, but provided no mission need justification.

137.    That the second office space preference constitutes an unlawful employment preference under the HHS standards of conduct, 45 C.F.R. Part 73, and that under the basic obligations for all federal employees, 29 C.F.R. Sec. 2635.101(11), defendant Allen had a duty to follow federal law and rules and regulations and to report and cease such unlawful authorization and to NOT participate in allowing payments in the form of cost reimbursements, or omissions of payments, to other agency components. Allen has a regulatory duty to protect government property and ensure it is used for mission purposes. 5 C.F.R. Sec. 2635.101(6), (8), (9), & (14). The unlawful expenditure either resulted in a

reduction of funds for the OMHA or a reduction in the NIH funds, or other agency component, prevented the office space from being used for mission needs, and the preferred employee received personal value for the use of the office which is not authorized by law or regulations, and which recoupment is warranted. That Ames has occupied the second office for some ten years at taxpayer expense, which may have a value range in the hundreds of thousands of dollars range.

138.    That defendant Allen unlawfully retaliated against Plaintiff for informing his supervisor, acting Depuy Chief Jonathon Eliot, on June 7, 2022, that defendant Allen's conduct interfering with the GSA leases for OMHA field offices, was improper and that he was going to report it to an outside agency to investigate, and that there was a need to investigate the defendants' fiscal conduct. The Plaintiff was not officially made aware of defendant Allen's conduct against him and the reason for the investigation was based upon the parking situation and retaliation for disclosing to Plaintiff's supervisor the need to investigate Allen, until the agency officially disclosed a new reason for the investigation on December 10, 2024, relating to the parking situation. That Plaintiff had a protected speech right to make said statements to his supervisor and had a federal regulatory duty under 5 C.F.R. Sec. 2635.101(11) to make said statements to report fraud, waste, abuse, and corruption.

139.    That defendants Allen and Does knew of the protected speech activity since Plaintiff reported it to his supervisor and the supervisor reported it up the chain of command to defendant Allen, and/or learned of it from other sources. That the protected speech activity caused defendant Allen and defendants Does to retaliate against him by creating a false

68

allegation against Plaintiff in his June 8, 2022, notice letter and concealing the real reason for the investigation was to retaliate against Plaintiff because Plaintiff was about to notify an outside agency of defendant Allen's conduct to interfere with an approved budget and the GSA lease for the Phoenix Field Office. That the agency's production of records in the Second Lawsuit establishes defendants knew Plaintiff was going to report Allen's fiscal conduct to proper authority.

140.    That defendant Allen, to support his retaliation and provide a cloak of legitimacy to it, placed Plaintiff on investigational leave and manufactured a vague and false notice of allegation that he knew Plaintiff could not defend against, to prevent Plaintiff from disclosing Allen's fiscal conduct. Additionally, defendant Allen provided false notice of the allegation to Plaintiff in violation of agency standards and policies and due process of law, so Plaintiff could NOT mount a defense to the investigation, precluding Plaintiff from presenting relevant and material evidence and calling witnesses, and in an attempt to discredit Plaintiff in the event an outside agency investigated Allen.  Federal case law holds post-employment acts of retaliation under the False Claims Act are actionable.

141.    Negative statements and conduct which also impacted plaintiff's post-employment opportunities are actionable under the retaliation provisions in the False Claims Act. *United States ex rel. Felten v. William Beaumont Hospital,* 993 F.3d 428 (6th Cir. 2021). Here, in addition to retaliation by placing Plaintiff under investigation and on investigative leave while he was on duty, defendant Allen and Does continued to retaliate against Plaintiff by its post-employment conduct of tainting the settlement agreement and release in the First Lawsuit by concealing material evidence of the real reason for the investigation and

defendant Allen's false notice letters, and taking action or omissions, denying Plaintiff's attempt to correct and amend the inaccurate closed investigation records in May and October 2024, amongst other acts pleaded herein.

142.    Defendant Allen signed false statements at least two times for the purpose of retaliating against Plaintiff for fulfilling his duty as a federal employee and participating in good faith and bona fide whistleblower activity, as he was required to do under 5 C.F.R. Sec. 2635.101(11). That defendant Does, provided material assistance to defendant Allen by concealing the false statements and participating in conduct to cover up their illegal activity by informing FOIA and Privacy Act officers the false allegation notice letters were correct when they knew the information contained in the June 2022 notice letters were false, and which negatively impacted Plaintiff by denying his correction request, which constitutes an adverse determination.

143.    That retaliation provisions under the False Claims Act apply to every person and include federal employees as both plaintiff-relators and defendants and are not subject to the CSRA or other administrative exhaustion doctrines and are directly actionable in federal courts. It applies to the concerted and fraudulent conduct of Allen and Does who conspired to fraudulently conceal material evidence and to retaliate against Plaintiff by putting him under investigation. Defendant Allen interfered with previously approved budget appropriations and GSA contracts for field office leases, including the Phoenix, Arizona Field Office, by terminating judges' parking privileges at the OMHA Phoenix Field Office, for the purpose of diverting the funds to undisclosed purposes to include paying for the unlawful TDY funds and second office space and/or other unlawful or

unapproved purposes. That the conduct of approving false claims, making false statements, to incur second office space incurred debts and obligations detrimental to the government and incurred costs to, the OMHA, NIH, other agency components, loss of use of property and funds for other legitimate mission purposes, and was done secretly and with deception, and constitutes a fraudulent and continuous scheme to defraud the government, and which was outside of lawful duty. All acts further constitute overt acts in furtherance of the conspiracy.

144.    To plead a claim for retaliation under the False Claim Act, an employee must plead and subsequently prove at trial he/she was engaged in a protected activity, that the defendant knew the Plaintiff was engaged in a protected activity, and that defendant retaliated against Plaintiff because of the protected activity. Proving the specific underlying violation under the False Claim Act is not a requirement, only that the Plaintiff was reviewing or investigating matters reasonably calculated or which reasonably "could" lead to a viable FCA claim. A protected activity occurs where plaintiff in good faith believes and a reasonable employee in the same or similar circumstances might believe that defendant is possibly committing fraud against the government. *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097 (9th Cir. 2008); *U.S. ex rel. Hopper v. Anton,* 91 F.3d 1261 (9th Cir. 1996).

145.    The Plaintiff attempted to review the matter in good faith by addressing it at a senior leadership meeting, with no explanation provided by defendant Allen as to where the monies from terminating parking would be spent, or why the funds were needed elsewhere. The Plaintiff was retaliated against shortly after he informed his supervisor, he was going

to contact an outside office to review defendant Allen's fiscal actions.

146.    Allen caused Plaintiff immediate harm mentally, pecuniary harm, emotionally, and physically, including emotional distress, loss earnings, loss economic opportunity, and retirement benefits, weight loss and panic attacks, increased stress, loss of reputation, and loss of position, and as otherwise pleaded above.

**Count 6. Declaratory and Equitable Relief: Violations of OWBPA and Waiver Provisions, 29 U.S.C. Sec. 626(f)** *et al.***, and Fraudulent Concealment Conduct Renders the Release Invalid.**

147.    Plaintiff incorporates by reference all previous paragraphs alleged herein.

148.    Plaintiff seeks declaratory relief declaring that the release of liability is null and void because defendants Allen and Does have violated the OWBPA and based upon Allen's deceptive and fraudulent conduct as recognized by federal case law, including fraudulent misrepresentation and fraudulent concealment, providing false notice of the allegation to Plaintiff and then by fraudulently concealing his conduct. The Older Workers Benefit Protection Act (OWBPA) requires ADEA settlement agreements to contain notice of rights provisions to protect older workers from future discrimination and retaliation. The OWBPA requires adequate consideration and prohibits release provisions which apply to future acts. Broad covenants NOT to sue in the future are invalid under the OWBPA. The OWBPA applies to federal employees' ADEA claims under 29 U.S.C. Sec. 633a and Sec. 626(f). The statute provides certain minimum language waiver requirements, but that list and language is not exhaustive or exclusive. Waivers under the OWBPA must be based upon sufficient disclosure and information and be knowing and voluntary. Courts generally will analyze all circumstances. Informed consent is implicit and required. Improper

conduct, including fraud and deception, and withholding material information, precludes a knowing and voluntary waiver. The burden of proof establishing the validity of a waiver is on defendant Secretary. 29 U.S.C. Sec. 626(f).

149.     While the prior age discrimination settlement agreement gave lip service to the OWBPA, Plaintiff was not officially aware that defendants Allen and Does have withheld material information from Plaintiff at the time the previous age discrimination case was settled. This included at the very least the real purported reason for the investigation, including the parking situation, and other management acts, which have never been identified, and which were previously denied by the agency in its prior pleadings. Defendants' acts of concealment precluded Plaintiff from acquiring informed consent and a knowing and voluntary waiver and constitutes improper conduct and fraud. Defendants further took advantage of Plaintiff's uncontrolled hypertensive medical condition at the time to gain a negotiation advantage. Additionally, the terms in the settlement release, including the term purporting to waive "unknown" occurrences, constitutes an invalid covenant not to sue for future discrimination and per se violates Sec. 626(f)(1)(C), of the OWBPA, which also renders the release invalid. The EEOC and federal case law have determined improper conduct will invalidate OWBPA waivers. See *Pilon v. Univ. of Minn.*, 710 F.2d 466 (8th Cir. 1983). The Secretary is responsible for the acts of Allen and Does.

150.     Allen and defendants Does have further committed acts of age discrimination and retaliated against Plaintiff because of age after the settlement and violated the OWBPA, including continuing their wrongful and fraudulent concealment of material information. The Plaintiff had a motion for partial summary judgment pending at the time he settled

with the Secretary, which would have likely been successful had the Secretary, Allen, or Does, disclosed the real purported reason for the investigation was the parking situation. The evidence would have established the investigation was a pre-text for age discrimination and cast severe doubt upon Allen's credibility.

151.    Plaintiff is entitled to declaratory and equitable relief voiding the settlement release and may proceed to adjudicate all his ADEA claims, occurring during employment and post-employment, based upon Allen's discrimination and retaliation including his concealment conduct, and denying Plaintiff's records correction request in August 2024 and October 2024, and other acts as pleaded above.

152.    The OWBPA requires adequate consideration. The agency's failure to strictly abide by the terms of the settlement agreement, the concealment of material information which would have significantly strengthened Plaintiff's litigation and settlement negotiation position, and the agency's counsel acknowledgement in the Privacy Act lawsuit that the agency's monetary award was insufficient, establishes there was a lack of adequate consideration. Counsel Singh, on behalf of the agency, admitted the $5,000.00 monetary settlement paid to the Plaintiff was nothing more than a nuisance value, bragging and clearly indicating that then Secretary Becerra, by Allen and Does, had deprived Plaintiff of adequate consideration thus taking advantage of Plaintiff and depriving him of informed consent by concealing material information. (CV-24-00417-TUC-RM, Doc. 17).

153.    The Plaintiff has complied with all Federal EEO processes under 29 C.F.R. Sec. 1614.101, *et al.* Tender of consideration from the previous settlement agreement is not authorized or required. Plaintiff may litigate his initial claims and his new retaliation

claims. Defendant Secretary may receive an offset of previously paid damages from the age discrimination settlement if and after higher damages are awarded. *Syverson v. IBM Corp.*, 472 F.3d 1072 (9th Cir. 2006); *Juhola v. Dept. of the Army*, EEOC Appeal No. 01934032 (June 30, 1994). In other words, defendants cannot benefit from its violations of the OWBPA evidenced by its conduct concealing material evidence.

154.    Defendant Allen further continued to misrepresent the real reason for the investigation by taking acts and making omissions to conceal the false statements and real reason for the investigation by having action taken by Does to falsely inform Privacy Act officers by falsely stating his statements were correct, and by concealing the false notice of allegation which he signed and by concealing the real reason for the investigation, as alleged herein previously.

155.    That Allen and Does in their position and pursuant to federal regulations and court rules as pleaded above had an affirmative duty to disclose and to NOT conceal the false and misleading statements and the real reason for the investigation. Moreover, the defendants had a duty to plead matters in good faith under Rule 11, and instead deliberately misrepresented to Plaintiff his managerial decisions had nothing to do with the investigation, and then changed its position on December 10, 2024, with no explanation or justification.

156.    The false statements made by defendant Allen and the omissions were material, and at the time he made them he and defendants Does had knowledge that the statements and omissions were false. Defendants knowingly concealed the false statements and had a duty under federal regulations and Federal Court rules, and in their positions as OMHA Chief

Judge, as ethics officer, licensed attorneys, employees assigned to and/or working with the Program Integrity Division, and as federal employees, and because defendant Allen held a confidential employment relationship with Plaintiff, to disclose the false statements, and the real purported reason for the investigation. Defendants Allen and Does knew and had foreseeable belief the false statements created an indicium that Plaintiff had committed misconduct and that records maintained by defendants contained false, incomplete, and inaccurate information, which would negatively import Plaintiff's employment and other opportunities, professional reputation, legal and property rights, and standing in the legal community.

157.    That Plaintiff had a right to rely upon defendant Allen's notice of allegation as being truthful since he is a licensed attorney, head of the OMHA, and had direct authority over the Program Integrity Division and was ultimately responsible for making sure all employment inquiries abide by HHS regulations and instructions and federal law and was in Plaintiff's direct chain of command.

### JURY DEMAND

158.    Demand for jury trial is made for any, and all counts and issues, allowed to be tried by a jury.

### RELIEF REQUESTED

WHEREFORE, Plaintiff Cianci requests the following relief:

a.    For liability findings against defendant Allen, and Does, in their individual capacity, jointly and severally, or as allowed by law, that they committed acts against Plaintiff which violated his constitutional rights under *Bivens;* and

76

retaliated against Plaintiff under the False Claims Act; and a finding and declaration that the previous settlement release was based upon deception, overreach, fraud, and/or misrepresentation, and/or that Plaintiff was deprived informed consent, and is therefore, null and void, and that post-employment acts of retaliation, occurring after August 1, 2023, are not covered by the settlement release, in any event.

b.  For the Court to award all damages allowed by law against defendant Allen and Does, in their individual capacity, under *Bivens* and the False Claims Act for retaliation, including punitive damages. That all Does be held jointly and severally liable with defendant Allen, or as allowed by law.

c.  For all attorneys' fees and court costs allowed by law.

d.  For equitable relief, against the defendant agency, Secretary Kennedy, and Allen in their official capacity ordering correction of the investigation records, and/or expungement, and formal recession of the investigation, pursuant to the ADEA and 29 C.F.R. Sec. 1614.501, and the Privacy Act, and an order enjoining the application of the release under the OWBPA.

e.  For damages and other relief allowed by law for maintaining inaccurate, unfair, and incomplete records under the Privacy Act, against the agency.

f.  For damages and other relief allowed by law against defendant Allen and Does, under the retaliation provisions in the False Claims Act, for double wages and earnings loss.

g.  For damages and other relief, including loss earnings, compensatory

damages, reinstatement of his previous position, and all other damages including back and front wages allowed by law, for violating the ADEA, against the Secretary in his official capacity.

h.    For all other relief allowed by law.

**SUBMITTED a**nd dated this 24th day of May 2025.

_By Michael Cianci_
Michael Cianci
#005538
Law Offices
333 N. Wilmot Rd., Suite 340
Tucson, AZ. 85711
480-205-6210
Mcianci100@outlook.com
Attorney, Plaintiff